ARTHUR REED ALIAS ARTHUR DAVENPORT, AND LOUIS THOMAS, ALIAS LOUIS CURTIS, *Plaintiffs in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed June 18, 1927.

Petition for Rehearing Denied July 18, 1927.

34

*Thomas Hamilton, T. Hagood Gooding,* and *E. P. Beatty,* of Clearwater, for Plaintiffs in Error;

*J. B. Johnson,* Attorney General, *H. E. Carter,* Assistant Attorney General, for the State.

BROWN, J.—These two plaintiffs in error, together with two women defendants, were jointly indicted by the grand jury at a special term of the circuit court of Pinellas County for the murder of E. E. Blewfield, and the petit jury found plaintiffs in error guilty as charged in the first and third counts of the indictment, both of which charged murder in the first degree, and they were sentenced to death by electrocution. The judgment of conviction is brought before us on writ of error.

The indictment charged the crime to have been committed on August 16, 1926, and the indictment was found on September 7th, twenty-two days later. The record shows that the defendants were arraigned and pleaded not guilty on the day the indictment was returned, and the

case was set for trial the next day, September 8th. The minutes for September 8th show that the defendants were personally present in court during the empanelling of the jury, accompanied by their counsel, a practicing attorney who had been appointed by the court to represent the defendants. Just when this attorney was appointed does not appear, but probably on that date, as the minute entries for the day before, as to their arraignment, did not show that they were accompanied by counsel. After the jury was empanelled and sworn, the taking of testimony was begun on September 8th, and the trial concluded on September 9th, with the verdict of ''guilty,'' without recommendation. The judgment and sentence of the court were pronounced on September 10th, motion for new trial was filed and an order made on September 15th, denying such motion and allowing ten days in which to settle and sign a bill of exceptions.

No bill of exceptions was presented to the trial judge, Judge Freeman P. Lane, or any other judge acting in his stead, within the period of ten days allowed by the court. At least, there is no hint of any such thing in the record; nor is any such claim made in the briefs. An order by the trial judge, dated January 7, 1927, granting the motion of the attorney whom he had appointed to represent the defendants to withdraw from the case, appears in the record, also an order dated January 14, 1927, denying the petition of plaintiffs in error for writ of error *coram nobis*, signed by the attorneys who have since represented the plaintiffs in error in the court below and in this Court. Both of these orders were signed by Judge Lane; so it appears that he was still carrying on his judicial work up to that time.

There was an effort made to establish a bill of exceptions by the affidavits of three disinterested bystanders, and on

February 5, 1927, one of the attorneys for plaintiffs in error filed an affidavit, evidently attached to such proposed bill of exceptions, which stated that, having been recently employed for the named defendants, he personally presented "the attached bill of exceptions, to Judge J. C. B. Koonce, sitting in this circuit for Judge Freeman P. Lane, who is seriously ill with paralysis in his home in St. Petersburg, Florida," and that Judge Koonce refused to sign the bill of exceptions, and that Judge Lane was unable to sign it, and that no one could see him. The writ of error was sued out on January 15, 1927. The affidavits of the bystanders are dated February 4th and 5th, 1927. These affidavits alleged that the purported bill of exceptions was presented to Judge Koonce, acting for Judge Lane, who had been stricken with paralysis, and that he, Judge Koonce, had refused to sign the same. The affidavits do not show that the bill of exceptions had been presented to Judge Lane, or any judge acting in his stead, within the ten day period, or at any time, and that he had refused to sign the same; nor is the exact date of the presentation to Judge Koonce shown, but from the other entries in the record it must have been more than four months after the expiration of the ten days allowed in the order of the trial judge. When the present attorneys for plaintiffs in error were employed in the case, the time for presentation of bill of exceptions had long since expired.

Sec. 2906, Rev. Gen. Stats., relating to bills of exceptions, does not specify the time for authentication, but must be construed in connection with Rule 97 of Circuit Court Practice, which has long been in effect in this State, and which provides that bills of exceptions shall be made up and signed during the term of the court at which the verdict is rendered or trial had, unless by special order further

time is allowed. "When no statute provides otherwise, the settlement and signature of a bill of exceptions must generally be made before the expiration of the term at which the trial is held, the reason being that the court loses control of the record with the expiration of the term." 3 Encyc. Pldg. & Prac., 465, and cases cited, including several Florida cases.

In the case of Montgomery v. The State, 54 Fla. 73, 45 So. 813, this Court, speaking through Mr. Justice WHIT-FIELD, said :

"The statutes of the State and rules governing the circuit courts of the State provide the manner and time of making up and filing a bill of exceptions, so that it may become a part of the transcript of the record brought to the appellate court by writ of error. Unless the statutes and the rules governing the preparation and authentication of bills of exceptions are complied with, the attempted bill of exceptions is a nullity and cannot be considered by the appellate court. Smith v. State, 20 Fla. 839; Myrick v. Merritt, 21 Fla. 799; Picket v. Bryan 34 Fla. 38, 15 South. Rep. 681; Jacksonville St. R. Co. v. Walton, 42 Fla. 54, 28 South. Rep. 59. It is the duty of the plaintiff in error to have the bill of exceptions properly prepared as the rules direct and duly authenticated as required by Section 1696, of the General Statutes during the progress of the cause or within the time allowed by an order duly made and entered under Rule 97. If the bill of exceptions is duly prepared and *presented* for authentication within the time allowed under Rule 97, it may be authenticated afterwards as of the day on which it was properly presented. Mayo v. Hinote, 16 Fla. 673; Glasser v. Hackett, 37 Fla. 358, 20 South. Rep. 532.

"The statute (now Sec. 2906, R. G. S.) expressly provides that the judge of any court shall sign upon request

any bill of exceptions taken during the progress of the cause and tendered to the court, if it fairly states the truth of the matter and the exception taken; and the same shall when signed become a part of the record of such cause; and when the judge refuses to sign a bill of exceptions when properly tendered, it shall be lawful for three persons to sign the same *in the presence of the judge* and certify that the same was presented to the judge and he refused to sign it, then said bill shall be valid and have the same force as though it were signed by the judge. When the bill of exceptions is authenticated by three persons under the statute it must appear therein that the persons so authenticating were present at the trial and had knowledge of the matters stated in the bill of exceptions and they must certify to the truthfulness of the bill of exceptions. Williams v. Pitt, 38 Fla. 162, 20 South. Rep. 936.

"It does not appear in this case that the bill of exceptions was presented to the judge of the trial court and that he refused to sign it, or that it was signed in the presence of the judge. This being so, the so-called bill of exceptions is a nullity and can not be considered by this Court even though it appears at length in the transcript certified by the clerk of the trial court. If the bill of exceptions had been presented to the judge during the progress of the cause as contemplated by the statute it could then have been authenticated. It appears from the transcript of the record proper that thirty days were allowed to prepare and submit a bill of exceptions. If the judge was suspended from office during that time and refused or failed for that reason to authenticate the bill of exceptions to him, and a proper bill of exceptions was duly filed or presented in the court within the time allowed, the judge of the court may, at a subsequent day, authenticate the bill as of the day it

was in fact duly prepared and submitted where the court in law should be during proper hours within the time allowed by the order. If the party in preparing and submitting a bill of exceptions under a valid order does everything in his power to have the bill authenticated within the time allowed, but for reasons beyond his control there is no judge competent to authenticate the bill within the time allowed, the time during which there was no judge after the bill of exceptions was duly presented where the judge in law should be, may not be counted against a party not delinquent.''

It appears, therefore, that the purported bill of exceptions attempted to be established upon the affidavits of bystanders in this case, does not comply with said statute and rule. It is not made to appear that a bill of exceptions was tendered to the judge during the term of court at which the trial was had and verdict rendered, or within the extension of time allowed by a special order of the court, or that when so tendered such judge refused to sign the same. In fact, all the indications in the record are to the effect that it was not so tendered; nor does the record show that the then attorney for plaintiffs in error requested the judge for any greater time than the ten days which was allowed by the order and which it must be conceded was an unusually short time. It appears affirmatively from the record that it was not until about four and a half months after the expiration of the time allowed that the newly employed counsel obtained the oath of the three bystanders. Meanwhile, Judge Koonce had refused to sign the purported bill of exceptions, as shown by the affidavits in the record, and properly so, the time having expired. It not appearing that the purported bill of exceptions was presented to the judge during the time allowed, and that he

refused to sign the same, we cannot hold this document to be a legal bill of exceptions.

Bills of exceptions were unknown to the common law, and it was not until the time of Edward I that a statute was enacted authorizing bills of exceptions in civil cases. 2 R. C. L. 140. If a party desires appellate review of matters *in pais,* not a part of the record proper, such as rulings of the court on the admission and rejection of testimony, the giving and refusing of charges to the jury, motion for new trial, etc., he must bring such matters before the appellate court by a bill of exceptions secured in the lower court upon compliance with the requirements of the statutes and rules of court governing such matters. These are quite reasonable and liberal, and designed to afford to parties reasonably diligent an adequate opportunity for the presentation of all such matters to the appellate court, but under such safeguards as tend to secure a fairly correct and truthful record of the proceedings of the court below while the facts of the trial are still fresh in the memories of the trial judge and counsel in the cause. Being the creature of statutes and rules of court, the doctrine has long obtained in this state that bills of exceptions must be presented and authenticated within the time prescribed by law, or they do not become a part of the record, even though copied into the transcript, and cannot be considered by the appellate court. 2 R. C. L. 144; Bush v. State, 21 Fla. 569; Washington v. State, 48 Fla. 62, 37 So. 573; Bardwell v. State, 49 Fla. 1, 38 So. 511; Carter v. Stockton, 60 Fla. 33, 53 So. 450; Jackson v. State, 84 Fla. 646, 94 So. 505; Granquist v. State, 86 Fla. 32, 97 So. 205; Lanier v. Shayne, 85 Fla. 212, 95 So. 617; Preston v. The State, 86 Fla. 476, 98 So. 358.

In the absence of some reasonable showing why the bill of exceptions was not presented to Judge Lane within the

time allowed by his special order, and his refusal to settle and sign the same, plaintiffs in error were not entitled to invoke the provisions of the statute authorizing the authentication of such bill by three disinterested bystanders, under the very terms of the statute, and the purported bill of exceptions copied into the transcript in this case is therefore a nullity and cannot be considered. To accede to the earnest pleas of counsel and depart from the rule so long in force in this state, established by the uniform decisions of this Court as firmly as though dictated by express statute, would be an act of judicial law-making and repealing which we would not be authorized to do. ''The duty of the courts is to decide causes according to established principles and rules of law.'' Potsdamer v. State, 17 Fla. 895, 915. The right to appellate review of a case which has already been tried in *nisi prius* court, is not a natural, absolute, or unqualified right, but is a right created by law, either organic or statutory, to enjoy which a party must first comply with the conditions precedent and regulatory required by law. In the absence of constitutional inhibition, it is within the power of the Legislature to prescribe the cases in which, and the courts to which parties shall be entitled to bring a cause for review; and to impose such conditions and restrictions as it may see fit. 3 C. J. 297, 299, and cases cited; Curry v. Marvin, 2 Fla. 411. The presumption is that our trial courts perform their duty and that their judgments are lawful and correct. Error is never presumed and where in any case a party deems that error has been committed against him, the burden is upon him to bring to the appel-court a correct and truthful transcript of the record in the trial court, and a legal bill of exceptions as a part thereof when one is desired, properly authenticated, and made up in accordance with the requirements of the law and rules established governing such matters, and making it thereby

to affirmatively appear that the error, for the commission of which he seeks that the verdict and judgment be reversed, was committed by such court. O'Steen v. The State, 111 So. 725.

Several assignments of error are based upon the denial of the petition for a writ of error *coram nobis*, filed on January 14, 1927, and denied the same day. The writ of error to the judgment of conviction was sued out on the following day. The plaintiffs in error, seeking by writ of error to review the judgment of conviction, are not entitled to assign error upon the subsequent denial by the court below of petition for writ of error *coram nobis*. To obtain a review of the court's judgment denying the writ of error *coram nobis*, a separate and independent writ of error would have to be obtained from this Court. The suing out of a writ of error is not, strickly speaking, a continuation of the suit below to which it relates, but is in the nature of the commencement of a new suit to annul and set aside the judgment of the court below. State v. Mitchell, 29 Fla. 302, 10 So. 746; U. S. Mutual Acc. Assoc. v. Weller, 30 Fla. 210, 11 So. 786; Glasser v. Hackett, 37 Fla. 358, 362, 20 So. 532; Loring v. Wittich, 16 Fla. 323, 327; State v. Canfield, 40 Fla. 36, 23 So. 591; 3 C. J. 304. On the other hand, an appeal is not regarded as in the nature of a new suit, but rather as a continuation of the suit below. 3 C. J. 316, 320. The writ of error *coram nobis* is none the less a writ of error because it is sued out for the purpose of obtaining a review of a judgment by the same court which rendered the judgment, nor because it is limited to vital error of fact not appearing of record. Upon the issue made up under a writ of error *coram nobis*, a trial is had, and such issues are generally new issues, rather than the issues in the original action. It, therefore, is also in the nature of a new suit, and to the judgment of the court

below upon such writ of error *coram nobis,* a writ of error may be sued out to this Court. 34 C. J. 390, *et seq.;* 5 Encyc. Pldg. & Prac., 31-37. We cannot, therefore, here consider the assignments of error based upon the denial by the court below of the above mentioned petition. We might observe in passing, however, that said petition does not appear to measure up to the requirements outlined in Lamb v. The State, 107 So. 585, and Washington v. The State, 110 So. 259.

Turning then to the assignments of error based upon matters appearing in the record proper, it appears that but two questions remain for consideration. One of these is whether or not the verdict is so contradictory as to be invalid and require a reversal. It is alleged to be fatally contradictory in that it found the defendants guilty of murder in the first degree as charged in the first and third counts of the indictment, the first count charging them with having killed the deceased with a steel bullet, and the third count charging the killing to have been with a leaden bullet, "whereas the testimony shows that there was only one shot fired." We cannot consider the last clause in the assignment on this point, there being no legal bill of exceptions. But aside from what the testimony may have been, there is no material inconsistency in the verdict. What difference did it make to the deceased, or to society and the law, whether the deceased was killed by a steel or a leaden bullet, or a bullet composed partly of both metals, such as a steel-jacketed bullet? Absolutely none. Thus in the case of Howard v. State, 73 Fla. 694, 74 Sou. 882, it was held that there was no fatal variance between the allegations and the proof of the instrument with which the wound was inflicted if the instrument used produces or is capable of producing the same kind of wound as the instrument charged in the indictment. In that case the

allegation was that of assault with intent to murder by shooting another with a deadly weapon. to-wit, a shot-gun loaded with gunpowder and leaden balls, while the proof was that the wound was inflicted with bird shot fired from a gun in the hands of the accused. See also Webster v. State, 47 Fla. 108, 36 So. 584. It would seem to the writer of this opinion that an indictment for murder in the first degree should sufficiently charge all the essential elements of the crime which read simply as follows: "The Grand Jury for ———— County, State of Florida, upon their oaths, charge that, on the ———— day of ————, A. D., ————, A. B., unlawfully and with a premeditated design to effect death, did kill C. D., by shooting him with a gun (or with a rifle or pistol, or by cutting him with knife, as the case may be) against the peace and dignity of the State of Florida." Be that as it may, we are quite clear in holding that under the former decisions of this Court, the above assignment of error raises an immaterial isssue and is not well taken.

The only other assignments of error based upon the record proper are those charging the court below with error, "because no sufficient or reasonable time was allowed the defendants between the date of the indictment and arraingment, to-wit, September 7th, 1926, and the date of trial, to-wit, September 8, 1926, in which to prepare their defense, and consult their counsel appointed for them by the court, they not being able to employ counsel." Also that the court erred "in forcing the defendants to trial in such short time, to-wit, said offense having been alleged to have been committed on the 16th day of August, 1926, and trial taking place on the 8th day of September, 1926, a special term of court having been called for this purpose only."

Taking up these assignments in reverse order, there be-

ing no bill of exceptions we are not able to say but that the circumstances of the crime charged against these defendants made it one of such a grave and heinous nature as justified the court below in the calling of a special term of the court for its investigation and action thereon by a grand jury on a date three weeks and one day after its alleged commission. The action of a grand jury is, after all, *ex parte,* and its function that of an inquisitorial and accusatorial character. It merely brings and formulates the accusation.

It is not the speed or promptness of grand jury investigation and indictment which is likely to prejudice the case of a defendant or prevent him from having a fair and impartial trial before a jury of his peers. It is when the trial before the petit jury is forced upon him before he has had time to properly consult with his counsel and prepare his defense; or when compelled to go to trial so soon after the commission of the crime charged, in cases where great popular excitement and indignation have been aroused, as to make a calm, dignified, fair and impartial trial psychologically impossible,—it is then that the accused has good grounds for objection and exception when his prayers for postponement and allowance of more time go unheeded by the trial court. When all men know the end from the beginning—when in the face of excited public opinion no average jury could be expected to bring in anything but a verdict of guilt, regardless of the evidence, the judge who wants the trials in his court to be something more than a hollow mockery will rise superior to popular clamor for immediate action, and stay his hand until a fair trial can be had. Many men who would not hesitate to face the cannon's mouth will quail and tremble before an aroused and inflamed public opinion, or become, unconsciously to themselves, swayed and biased by it. The circuit judge must need

be a man of great moral as well as physical courage, and Florida's splendid progress to this good day,—what we have of law and order and security—is largely due to the fact that the vast majority of our circuit judges have been and are men of that type—Jurists who realize the great value of a reasonably prompt and expeditious administration of the criminal law, but who also realize that fairness and due process of law must not be sacrificed to speed, that persons accused of crime are not always guilty, and that whether they be innocent or guilty, they are entitled to an absolutely fair trial, under circumstances and conditions which make such a fair trial possible. If, to postpone court action until the turbulent waves of popular indignation have subsided sufficiently to make fair and decorous judicial navigation possible, means that the judge must fly in the face of popular clamor and run the risk of harsh public criticism, and listen anew to the oft-repeated (and sometimes deserved) story of "the law's delays"—yea, even if it means that such postponement may result in the mob and the rope for the accused, the judge should not hesitate. For if there is to be lynch law, it is far better for it to be administered outside than inside the temple of justice. And while the judge may be temporarily criticised and condemned, the fact remains that the people have no respect for a judge who is afraid of them, but on the contrary give their abiding confidence and admiration to the fearless and upright jurist who dares to defy and oppose them when they are wrong.

We are satisfied that these plaintiffs in error, on the record before us, have no just right to complain of the calling of the special term of court and their indictment twenty-two days after the date of the crime charged. Nor can we say from this record that the court, in placing them upon trial the day after their indictment and arraignment,

did not allow a sufficient and reasonable time for them to consult with their counsel and prepare their defense. It is true that the time was very short and that it is most unusual for the court to set a murder case for trial the day after the indictment is returned. But the facts of this case as disclosed by the evidence are not before us, and we can not say as a matter of law that the court erred in the respect above charged. The defendants did not object to being arraigned at the time they were, or ask for any other or further time for the purpose of preparing their defense, procuring witnesses, or consulting their counsel, or for any other purpose at that or any other time. When the case was set for trial on the day following their arraignment, they raised no objection, nor did they raise any objection or ask for further time when the case was called for trial on the 8th of September, at which time it affirmatively appears that they had been furnished with counsel. In fact, the record affirmatively shows that when this case was called for trial on September 8th, each of the parties announced themselves ready for trial. It, therefore, appears that the defendants were not ''forced to trial,'' to use the words of the assignment of error. Nor does it appear that they were put upon trial without sufficient opportunity to prepare their defense or procure witnesses, or consult with their counsel. Inasmuch as no further time was requested, we must presume that counsel for the defendant was of the opinion that the defendants were ready for trial, that they had accessible for use all the witnesses which they could obtain then or at any other time, and that there was no sufficient reason to ask the court for a postponement or continuance. The record shows nothing to the contrary. If the popular excitement was still so high as to make a fair trial at that time impossible, or highly improbable, the presumption is that counsel for the defendants would have

requested a postponement, or that the court itself would of its own motion have postponed the trial of the case. In the absence of any showing in the record to the contrary, we must also presume that the counsel appointed by the court to represent the defendants was competent to discharge his grave and important duties. It was certainly the duty of the trial judge, in this, a capital case, where the State was represented by trained and capable prosecuting attorneys, to have appointed as counsel for the defense a competent and capable lawyer, well equipped to discharge his difficult and delicate duties; and nothing appearing to the contrary in the record we must assume that this was done, and that such attorney was well advised and knew what he was doing when he announced that the defendants were ready for trial without making any request for further time.

The record in this case is quite different from that in either the case of Coker v. The State, 82 Fla. 5, 89 So. 222, or Anderson v. The State, 110 So. 250. In the Coker case the defendant objected to pleading until he had had time to examine the indictment. He demanded and was refused a copy of the indictment. Then, he objected to being put upon trial upon the ground that he had not had sufficient time to prepare for his defense, and requested sufficient time to prepare his motion for a continuance and place the same in writing. This motion was overruled and exception taken, and immediately, though the defendant announced that he was not ready, the trial was begun. In the Anderson case, the defendant moved for a short continuance in order to enable him to get his witnesses and prepare for trial, which motion was overruled. In both these cases, this Court held that the trial courts were in error in denying these reasonable requests. We adhere to, and wish to repeat, with full endorsement, the forcible language used

50

by this Court, speaking through Mr. Justice ELLIS, in the Coker case, as follows:

"Justice requires and it is the universal rule observed in all courts of this country it is most sincerely hoped, that reasonable time is afforded to all persons accused of crime in which to prepare for their defense. A judicial trial becomes a farce, a mere burlesque, and in serious cases a most gruesome one at that, when a person is hurried into a trial upon an indictment charging him with a high crime without permitting him the privilege of examining the charge and time for preparing his defense. It is unnecessary to dwell upon the seriousness of such an error, it strikes at the root and base of constitutional liberties, it makes for a deprivation of liberty or life without due process of law, it destroys confidence in the institutions of free America and brings our very government into disrepute. There is some intimation in the bill of exceptions that defendant's counsel may not have demanded for his client a copy of the indictment or a reasonable time for the preparation of his defense with sufficient clearness to be heard by the Court. This may be the explanation of this unseemly proceeding, in which according to an affidavit by the defendant's counsel, included in the bill of exceptions the defendant was hurried with such precipitancy into his trial that he was required to plead to the indictment within a few minutes of its presentation by the grand jury and before it had retired from the court room to resume its duties.

"It is almost impossible to imagine a state of circumstances under which such unbecoming haste would be justified in a court of justice. The offense with which the defendant was charged was a repulsive one, and if proven in an orderly, decorous and legal manner, there could be no doubt as to the retribution the law would exact, but

when citizens are denied their constitutional rights in a court of justice, no person is wise enough to foretell the possible harm that may result to humanity.''

There is no general principle of law fixing the exact time which must elapse between the finding of the indictment and the beginning of the trial thereon, nor has the legislature undertaken to fix any minimum time in such matters, but has left it to the discretion of the court to be governed by what is fair and reasonable in each particular case. What might be a sufficient time to prepare for trial in one case might be wholly insufficient in another. Therefore, no hard and fast rule could be applied alike in all cases. In the absence of any showing in the record to the contrary, and in the absence of any request by the defendants or their counsel for further time, we would not be authorized to presume that the court below did not allow sufficient time in this case. On the other hand, the presumption would be that where no further time was asked for, it was not needed nor desired. 8 R. C. L. 67, 68.

No reversible error being made to appear by the record, the judgment of the court below must be affirmed.

Affirmed.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.