EDWARD LEE v. STATE.
RAY KIRBY v. STATE.

155 So. 123.
Opinion Filed May 25, 1934.

*Robert Givens, Jr., Whitaker Brothers* and *Pat Whitaker,* for Plaintiff in Error Lee;

*Macfarlane, Pettingill, Macfarlane & Fowler,* for Plaintiff in Error. Kirby;

*Cary D. Landis,* Attorney General and *Roy Campbell,* Assistant, for the State.

ELLIS, J.—The two cases entitled as above may be considered together. Five persons, named Claude Barton, Edward Lee, Cecil Long, Arthur Guest and Ray Kirby, were jointly indicted on December 12, 1932, for the murder of Orlo Brown on July 13, 1932. There were two counts in the indictment. The first charged the five accused persons with the murder in the first degree as principals in the first degree; the second count charged Barton as principal in the first degree and the others as principals in the second degree. See Henry v. State, 81 Fla. 763, 89 South. Rep. 136.

In behalf of Edward Lee a motion was made to quash the indictment. The motion was overruled. The order was made the basis of an assignment of error. There were nine errors assigned in his case. The same motion was made in behalf of Ray Kirby and overruled. The order was not made the basis of an assignment of error in his case, although he assigns forty-five errors.

In behalf of Lee it is urged that the indictment was bad because it does not allege that the man slain was a human being. There was no error in the order. See Whitman v. State, 97 Fla. 988, 122 South. Rep. 567; Pell v. State, 97 Fla. 650, 122 South. Rep. 110; 10 Ency. Pl. and Prac. 146.

In the case of Reed v. State, 94 Fla. 32, text page 45, 113 South. Rep. 630, Mr. Justice BROWN gave in passing a short form of indictment for murder which he thought would contain under our statute all the necessary elements of a charge of murder in the first degree, omitting the allegation that the deceased was a human being. The case was referred to approvingly on that point in the Pell case, *supra;* and in the Whitman case, *supra,* while the point was waived, the court nevertheless considered it and definitely stated that in such an indictment it is not necessary to allege that the deceased was a human being.

Lee and Kirby and Barton entered pleas of not guilty to the indictment. Guest and Long also pleaded not guilty. Each record shows that Lee, Kirby and Barton were found guilty of murder in the first degree with recommendation to the mercy of the court. Each record shows the judgment of conviction and sentence of each defendant to life imprisonment in the State prison at hard labor. The judgment was entered on March 25, 1933. On the same day Lee took a writ of error and on December 18th following Kirby took a writ of error.

Prior to the trial and after the pleas of not guilty entered by each of the five defendants, the State, by the Assistant State Attorney, applied to the court for and obtained an order of severance as to Cecil Long and Arthur Guest, two of the defendants. Barton also applied for a severance as to him, but the application was denied.

Six names of persons as witnesses for the State appeared upon the back of the indictment when filed.

Lee, by his counsel, moved the court for an order directing the State Attorney to furnish a full and complete list of all the witnesses which the State expected to call to testify on behalf of the State, which motion was denied. That order is the basis for the second assignment of error in Lee's case, and is noted in the brief in his behalf as one of the questions of law involved. The motion is not contained in the bill of exceptions, where it should appear, and is not authenticated to this Court by a certificate of the Judge that it was the motion actually presented. Therefore, as the averred facts in the motion do not prove themselves and no affidavit was made in support of it, and counsel saw proper not to cause it to be placed in the bill of exceptions, where it properly belongs and where it would have received the Judge's certificate of authentication, we are at some loss how, in view of the gravity of the charge, the serious nature of the case, the matter should be treated.

Clearly the motion and the ground on which it rested are not before us. We have several times called attention to the Act of the Legislature which purports to authorize the insertion in the transcript of the record proper matter which occurs *in pais* and should be set out in the bill of exceptions (Sec. 4612 C. G. L. 1927.) and stated that such matters should be authenticated by the certificate of the Judge. See Branch v. State, 96 Fla. 307, 118 South. Rep. 13, 69 A. L. R. 1169; Jarvis v. State, filed April 19, 1934.

It is so much easier and much more consistent with principle and the orderly administration of justice by an appellate court, which speaks only from an authenticated record, to follow the course prescribed by the rules of this Court in the preparation of a cause for consideration. The

Clerk's certification of what transpires at the trial has no more authenticity or officiality about it than the certificate of the sheriff, an attorney at law participating as counsel in the case, or a bystander, would have.

It lies only in the power of the trial judge, or, in case of his refusal to certify, in the power of three bystanders acting within the direction of the statute, to give authenticity to evidence claimed to have been taken and transactions alleged to have occurred during the progress of the trial of a cause. This Court has the power to speak only from a duly certified record. A matter which occurs at the trial is matter *in pais,* not of record, and only becomes a part of the record when incorporated in a bill of exceptions duly authenticated by the judge's signature, or that of three bystanders in the circumstances named by the statute, Sec. 4616 C. G. L. 1927, and filed. Then the clerk may copy the bill of exceptions in the transcript and certify to the transcript as being a true and faithful copy of the record.

How much more orderly, systematic and accurate may a cause be presented to this Court on the record when these principles and rules are observed than when a so-called transcript is made up in a desultory, confused, conglomerated manner without reference to sequence of events and chronological order. This Court's function primarily and fundamentally is to correct errors that may have occurred in a cause either in the record proper or in transactions *in pais* or at the trial. To do the work accurately and with reasonable speed the transcript of the record should be made up in an orderly, systematic manner so that the Court may have succinctly but clearly a correct conception of what actually transpired.

The order of the court which is of record recites that a motion was made for a list of witnesses expected to be

called by the State. The indictment showed the names of six witnesses which the State expected to call. On the face of the record, therefore, there was no error in the court's order, but an examination of the bill of exceptions shows that the names of the six witnesses written on the back of the indictment were not the names of the witnesses by whom the State expected to prove the material elements of the crime charged against the three defendants, Kirby, Barton and Lee; that the State in fact relied upon two of the five defendants indicted, namely, Guest and Long, as to whom a severance had been obtained by the State. It is apparent that all the while, from the moment of the indictment, the State relied upon those two persons to establish the necessary elements of the crime charged against the three defendants who were placed on trial. In fact, without their testimony there could not have been a conviction of the three persons placed on trial.

The entire transaction, viewed in the perspective, that is to say, as a mental view or prospect, has the appearance of jockeying for position to spring a surprise and take defendants unawares.

When the State places a person accused of crime upon trial where life or liberty is involved, it can never, consistent with its dignity as the sovereign power, its sense of justice to its citizens and its obligation to preserve its tribunals absolutely free from all suspicion of smartness and trickery and unfair advantage, deny to the accused every legal right he has to a fair and impartial trial. He has a constitutional right to a trial by due course of law and to the administration of right and justice without sale, denial or delay. He may demand the nature and cause of the accusation against him, to meet the witnesses face to face and be furnished with a copy of the indictment. It is entirely inconsistent with the idea of justice, wholly foreign to the

mental and spiritual atmosphere of a judicial trial, offensive to the dignity of the sovereign State, that the trial of a person accused of a major crime, or an inferior crime as for that matter, should have in it, through the bearing of the judge, the activities of the court officials, the manner and conduct of counsel and the technique of the State's representative, any element or even suspicion of fraud, deceit, oppression or undue advantage.

The Constitution provides that the accused shall be informed of the nature and cause of the accusation against. him, as well as have a copy of the indictment against him, and it has been held that the words "nature and cause of the accusation" as used in the Bill of Rights to the Constitution mean that the gist of the offense shall be charged in direct and unmistakable terms. See Hinshaw v. State; 188 Ind. 147, 122 N. E. Rep. 418; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; U. S. v. Cook, 17 Wall. (U. S.) 168, 21 L. Ed. 538.

It may be that the purpose of the Constitution is realized by furnishing the accused with a copy of the indictment in which the accusation is made in clear and unmistakable language, but the ends of justice are not attained by a technical compliance with the words of the Constitution while the State conceals the names of secret prosecutors and refuses to inform the accused by what witnesses he will have to be confronted at the trial and thus designedly withholds from the accused an opportunity for a complete defense of himself, or an accommodation which information as to the names of witnesses by whom the State expects to establish the material elements of the alleged crime and upon whose testimony the grand jury found the indictment would bring to him.

It was not necessary at common law that the names of witnesses examined before the grand jury should be en-

dorsed upon the indictment. It is a statutory matter, but it is customary to have this done, and is true in several other jurisdictions. See Padgett v. State, 64 Fla. 389, 59 South. Rep. 946; Yarborough v. State, 94 Fla. 144, text 148, 114 South. Rep. 237.

We have no statute requiring it to be done, and in those states where statutes require it the provisions are held to be merely directory.

As early as 1889, soon after our Constitution of 1885 went into effect, this Court, speaking through Mr. Justice MITCHELL, said: It is the duty of the County Solicitor to "place the names of all the witnesses he intended to use on the back of the information, for it is a right the accused has, as far as possible, to know the names of the witnesses who are to testify against him, so as to enable him to prepare for his defense, and this is, we think, the practice. The State should never seek an undue advantage, but if officers acting for the State can by information accuse a man of crime and refuse or neglect to inform the accused as to the witnesses who are to testify against him, it would be an undue advantage."

The language was qualified, however, by the following words: "But we do not intend to say that the State cannot during the trial of a cause call witnesses whose names do not appear upon the back of the indictment or information, for the ends of justice may frequently require other witnesses to be called by the State; Mann v. State, 22 Fla. 600; but we do say that when a grand jury finds an indictment the names of the witnesses upon whose testimony it was found should be placed on the back of the indictment, and that when a prosecuting officer files an information it is his duty to place upon the back of the information the names of the witnesses from whom he derives his knowledge authorizing him to file the information and upon whom he

intends to rely." Murray v. State, 25 Fla. 528, text 534, 6 South. Rep. 498. The judgment in that case was reversed.

It appears that the law of this State upon the subject requires the prosecuting attorney, as a matter of duty, to place the names of witnesses upon the back of the indictment who testified before the grand jury and upon whose testimony the indictment was found and upon whom the prosecuting attorney relies for conviction, even though the common law does not require it to be done. If such is the duty of the prosecuting attorney, the defendant has a corresponding right to have the duty performed. Be that, however, as it may, it is wrong for the representative of the State to omit that duty and refuse to perform it upon a timely application by the accused, when the purpose of the refusal is obviously to take an undue advantage of the accused.

Lee made a timely application for the performance of the duty and he was deprived of his right and probably embarrassed in the preparation of his defense. For that error the judgment should be reversed as to Lee.

Kirby made no such application, and so far as the record discloses waived the right. At least the index to the transcript of the record discloses no such application and a reasonably careful examination of the transcript reveals none.

Kirby's writ of error was obtained about nine months after his conviction and his complete assignments of error, of which there are forty-five, show no assignment based upon an order denying to him a complete list of the names of State witnesses.

There is no attempt to comply with the requirements of Rule 20, relating to the preparation of the brief. However, as some of the forty-five assignments of error are discussed in four sections of the brief, we will consider the questions

of law presented by such discussions because of the seriousness of the charge, the gravity of the offense of which the accused was convicted.

The tenth, eleventh, sixteenth and seventeenth assignments of error present the double question whether Guest and Long, two of the indicted defendants charged with the murder of Brown and whom the State called as witnesses in its behalf, were "approvers," and if so, were they qualified to testify.

Section 8381 C. G. L. 1927 provides as follows: "Approvers shall not be admitted in any case whatever." Those words have appeared in the body of our statute law since November, 1828.

The Act in which the words originally appeared in the laws of this State was entitled "An Act for the Apprehension of Criminals and the Punishment of Crimes and Misdemeanors." The word "approver" was used in its technical comomn law meaning and the section of the Act, which is Seventeen, consists of the identical words which have since been continuously carried in our statute law. Sections Fifteen and Sixteen of that Act of the Legislative Council of the Territory dealt with indictments and presentments by the grand jury as the only two methods of commencing a prosecution for crime or misdemeanors of a certain class.

Indictments were required to be signed by the prosecuting attorney and indorsed on the back by the foreman of the grand jury a "true bill" or "not a true bill" according to the finding, but presentments for penal offenses were required to be signed by the foreman of the grand jury only.

It was the duty of the grand jury to present *every* offense against the penal laws of the Territory, or against those of the United States, whether any specific punishment was

pointed out or not if punishment had not been inflicted. Section 17 provided that "approvers" should not be admitted. There was at ancient common law a practice of criminal prosecutions called approvement upon which a custom or usage in such prosecutions was built by which a person accused of treason or felony was permitted to exonerate himself by accusing others and escaping prosecution himself. The custom was briefly as follows: the indicted person was arraigned and was permitted to confess before plea, and appeal or accuse another as his accomplice of the same crime in order to obtain his pardon.

Approvement was allowed only in capital offenses and. was equivalent to indictment as the appellee or the person so accused was equally required to answer the charge and if proved guilty the judgment of the law was against him and the "approver" so-called was entitled to his pardon "*ex debito justitiae.*" On the other hand if the appellee was acquitted the judgment was that the approver should be condemned. The custom or usage became obsolete even before the time of Lord Hale in 1609-1676. See Whiskey cases, United States v. Ford, *et al.,* 99 U. S. 594, 25 L. Ed. 399; 4 Sharswood's Blacksond's Com., 330.

The ancient usage authorized accomplices when admitted as witnesses in criminal prosecutions to claim a pardon as a matter of right, *"Ex debito justitiae."* There were three ways in the law and practice of England by which an accomplice could be entitled to a pardon. First, was by approvement; second, by discovering two or more offenders as required in certain Acts of Parliament, and third, where persons were embraced in some Royal Proclamation as authorized by an Act of Parliament. See Gray v. People, 26 Ill. 344; Rex v. Rudd, 98 Eng. Rep. (Reprint) 1114.

In the latter case Lord Mansfield, in 1775, said there were three ways in law and practice which give accomplices a

right to a pardon. One was in the case of approvement. Proceeding he said: "Approvers have a right to a pardon, persons within the Statutes of William and Anne, have a right to a pardon, and the other class of offenders who come in under the Royal faith and promise, have a right to a pardon; and in all these cases the Court will bail them, in order to give them an opportunity of applying for a pardon."

He pointed out that there was also a practice which does not give a legal right "and that is, where accomplices having made a full and fair confession of the whole truth, are in consequence thereof admitted evidence for the Crown, and that evidence is afterward made use of to convict the other offenders. If in that case they act fairly and openly, and discover the whole truth, though they are not entitled of right to a pardon, yet the usage, the lenity, and the practice of the Court is, to stop the prosecution against them, and they have an equitable title to a recommendation for the King's mercy." Lord Mansfield further said: "The law of approvement (in analogy to which this other practice has been adopted, and so modelled as to be received with more latitude) is still in force, and is very material."

As the point raised in behalf of Kirby is unusual and even new in that it is claimed for him that the two defendants, Guest and Long, by reason of being "approvers" were disqualified as witnesses, it may not be amiss to make another quotation from the language of Lord Mansfield in the case of Rex v. Rudd, *supra,* anent the subject of approvers. He said:

"A person desiring to be an approver, must be one indicted of the offense, and in custody on that indictment; he must confess himself guilty of the offense, and desire to accuse his accomplices; he must likewise upon oath discover, not only the particular offense for which he is indicted; but all treasons and felonies which he knows of; and after

all this, it is in the discretion of the Court, whether they will assign him a coroner, and admit him to be an approver or not: for if, on his confession it appears, that he is a principal, and tempted the others, the Court may refuse and reject him as an approver. When he is admitted as such, it must appear that what he has discovered is true; and that he has discovered the whole truth. For this purpose, the coroner puts his appeal into form; and when the prisoner returns into Court, he must repeat his appeal, without any help from the Court, or from any bystander. And the law is so nice, that if he vary in a single circumstance, the whole falls to the ground, and he is condemned to be hanged; if he fail in the color of a horse, or in circumstances of time, so rigorous is the law, that he is condemned to be hanged; much more, if he fail in essentials. The same consequences follow if he does not discover the whole truth; and in all these cases the approver is convicted on his own confession. See this doctrine more at large in Hale's Pleas Crown, vol. 2, page 226 to 236. Staunf. Pl. Crown, lib. 2, c. 52 to c. 58, 3 Inst. 129.—A further rigorous circumstance is, that it is necessary to the approver's own safety, that the jury should believe him; for if the partners in his crime are not convicted, the approver himself is executed.

"Great inconvenience arose out of this practice of approvement. No doubt, if it was not absolutely necessary for the execution of the law against notorious offenders, that accomplices should be received as witnesses, the practice is liable to many objections. And though, under this practice, they are clearly competent witnesses, their single testimony alone is seldom of sufficient weight with a jury to convict the offenders; it being so strong a temptation to a man to commit perjury, if by accusing another he can escape himself."

So the Legislative Council of 1828, by the Act mentioned abolished the practice or usage of approvement definitely and without qualification. But that action of the Legislative Council did not render an accused person incompetent as a witness against his co-defendants, nor from confessing his crime and implicating others.

Mr. Justice CLIFFORD, in the Whiskey cases referred to above, said: "Courts of justice everywhere agree that the established usage is that an accomplice *duly* admitted as a witness in a criminal prosecution against his associates in guilt, *if he testifies fully* and *fairly,* will not be prosecuted for the same offense, and some of the decided cases and standard text writers give very satisfactory explanations of the origin and scope of the usage in its ordinary application in actual practice. Beyond doubt, some of the elements of the usage had their origin in the ancient and obsolete practice called *approvement.*" (Italics supplied.)

It was said that great inconvenience arose from the practice of approvement in consequence of which a mode or procedure in analogy to that law was adopted. See 3 Russ. Crimes, 9th Am. ed., 596; 2 Stark. Ev., 4th Am. Ed., 15; Roscoe, Cr. Ev., 9th Am. ed., 597; *Ex parte* Wells, 18 How. (U. S.) 307, 15 L. Ed. 421.

These authorities are cited in the Whiskey cases, *supra,* and are copied here from a sort of personal satisfaction which I have in the possession in my private library of the old works referred to on crimes and evidence.

An examination of the record discloses few if any of the elements of the old usage of approvement. Guest and Long related their stories before the grand jury before they or any of their .alleged accomplices were indicted. When their evidence was admitted at the trial they had pleaded to the indictment. It appears that they were induced to make their statement inculpating Kirby by hope of a re-

ward to come to them in the nature of a promise that they
should escape prosecution.  As a gesture in apparent con-
firmation of the understanding the prosecuting attorney
procured for them a severance which enabled them to es-
cape going to trial at the time Lee, Kirby and Barton were
placed on trial.  The entire transaction has the appearance
of over-zealous efforts of official and semi-official persons
to obtain conviction of someone for the alleged murder of
Brown while in the effort to perpetrate a robbery.

The record shows a long drawn out and perfectly useless
examination of Long and Guest upon unessential details
leading gradually to the expedition culminating in the mur-
der in which Long and Guest attempted partially to ex-
culpate themselves.  It is apparent from their stories that
their confessions did not measure up to the nice require-
ments of the old usage when an approver won the right to
a pardon, or failing was executed as the criminal.

Their statements have the appearance of suborned testi-
mony.  Instead of a full, free and frank statement of their
participation in the crime, they appear to be half suspicious
of the *bona fides* of the grand jury, private detective, and
prosecuting attorney, who promised them immunity and
protection, and while giving the appearance of a confession
were careful to place themselves in the light of curious
friends of Lee, Kirby and Barton without knowledge of
their criminal intentions but as mentors or monitors of
protection for their too importunate companions.

We are persuaded that the evidence of the two confessed
participants in the murder of Brown is inherently weak
and insufficient to sustain a conviction of Lee and Kirby
only.  We think that the ends of justice will be subserved
by granting a new trial to Kirby as well as to Lee.  This
Court has exercised such power when after considering the
entire record and evaluating the probative force of tech-

nically admissible evidence it considers that justice will be subserved by ordering a new trial because the admitted testimony does not bear on its face the indicia of a truthful narration of facts. See Calloway v. State, 112 Fla. 599, 152 South, Rep. 429, and authorities there cited. In the case at bar there is the additional element of procedural tactics which were apparently designed to take undue advantage of the defendants.

It is ordered that the judgment as to Kirby and Lee be reversed and a new trial awarded to them.

The appeal in the case of Kirby v. State in the *coram vobis* matter is dismissed at the cost of the plaintiff in error.

WHITFIELD and TERRELL, J. J., concur.

DAVIS, C. J., and BROWN, J., concur in the conclusion.

BUFORD, J., dissents.