STATE *ex rel.* PHILIP LA RUSSA, NILO LIMA, TONY RODRIGUEZ and LOUIS NUNEZ v. JOHN R. HIMES, Judge, Criminal Court of Record, Hillsborough County.

197 So. 762

En Banc

Opinion Filed July 30, 1940

Rehearing Denied September 27, 1940

*Whitaker Brothers, Pat Whitaker* and *Cyrus W. Fields,* for Relators;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General, for Respondent.

TERRELL, C. J.—Relators were informed against in Hillsborough County for violating the lottery laws, Section 7667, Compiled General Laws of 1927. They filed their suggestion for writ of prohibition in this Court seeking to disqualify respondent to sit in the trial of their case. The affidavit of disqualification related a series of circumstances transpiring in 1936, 1938 and 1940, the latter circumstance being that while respondent was running for reelection as judge of the criminal court, he made the following statement to a public gathering in Hillsborough County, May 7, 1940: "The people are shot down in cold blood; the people are assaulted and their homes broken into, and what the people want is a judge who will put people like Philip La Russa and his associates away in Raiford."

The supporting affidavits contained the following statement made under like circumstances and in the same campaign: "People like Philip La Russa and his associates cannot come into court and get a license for gambling by a fine or to violate the lottery laws by a fine, but he would put them in Raiford where they belonged." All the affidavits contained other allegations of prejudice made at other times and of different character.

Respondent demurs to the suggestion for writ of prohibition and says that it does not meet the requirements of the law, Section 4341, Compiled General Laws of 1927, and is therefore insufficient to disqualify him to proceed further in the trial of the cause. The gist of respondent's contention is the relator's suggestion and affidavits are predicated on matters too remote and that the supporting affidavits are made on information and belief.

There is no merit to this contention. It is true that the

affidavits contain allegations of fact that took place as early as 1936 but the parts quoted and relied on here took place as late as 1940 in what appears to have been a heated campaign. The qualification "on information and belief" had reference to the trial and not to the contents of the affidavit.

The statute, Section 4341, Compiled General Laws of 1927, requires that the affidavit state the "facts and reasons for the belief that any such bias or prejudice exists." In State *ex rel.* Brown v. Dewell, 131 Fla. 566, 179 So. 695, we said that the sufficiency of such an affidavit is determined by whether or not it shows that the party making it has a well grounded fear that he will not receive a fair trial at the hands of the trial judge.

Fear that he will not have a fair trial may in some cases be a mental attitude but if the conduct of the judge has been such as to create it, the law requires that he recuse himself. It may ultimately be as devoid of reality as the cenotaph is the remains of the hero it commemorates but if conclusively shown that the seed of fear was planted and the facts related give a reasonable man ground for belief that the judge is prejudiced, that is sufficient. It is contrary to all human experience to contend that a judge under the circumstances stated may single out one charged or that may be charged with crime and talk to the public about sending him to Raiford (State penitentiary) and then contend that the one singled out when hailed before the judge for trial had no ground for belief that the latter was prejudiced.

This situation is typical of how restricted the candidate for judicial preferment is limited as to topics he may discuss on the hustings. The candidate for legislative or executive office is expected to announce his position on policies and issues and to stoutly advocate 'them but when a candidate

for the judiciary does this, he disqualifies himself to sit in any cause affecting the issue he advocates. His oath of office limits his declarations from the stump. The moment he allies himself on either side of issues or individuals, he endangers his position as a judge and apparently destroys his neutrality. The man in the moon and the weather man are about all the people he can with impunity talk about without attitudinizing himself. He may indulge in a few pleasantries at the expense of Uncle Remus and the cops but that is the limit of his tether. The makers of the Federal Constitution realized the utter futility of judges engaging in political combat and galvanized them from it by making them appointive for life.

In State *ex rel.* Brown v. Dewell, *supra;* State *ex rel.* Mickle v. Rowe, 100 Fla. 1382, 131 So. 331; State *ex rel.* Davis v. Parks, 141 Fla. 516, 194 So. 613, and in Dickenson v. Parks, 104 Fla. 577, 140 So. 459, this Court discussed the law governing this question. On authority of these cases the demurrer to the suggestion and the writ of prohibition is overruled.

It is so ordered.

WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.