THE STATE OF FLORIDA, on the relation of WILLIAM D. BART-
LETT, MERRILL A. YARBOROUGH, CHARLIE THOMAS, JACK
FRIEDLANDER, and UKE BYER, v. STANLEY MILLEDGE, as
Circuit Judge of the Eleventh Judicial Circuit in and for Dade
County, Florida.

25 So. (2nd) 195                                    January Term, 1946
March 8, 1946                                                 En Banc

*Whitaker Brothers,* for petitioners.

*Stanley Milledge,* in proper person, for respondent.

*J. Mark Wilcox,* as amicus curiae.

PER CURIAM:

Upon consideration of the petition for prohibition, the
brief filed by counsel for the petitioners, and the arguments
offered by Mr. Whitaker, representing the petitioners, and
Mr. Wilcox, representing amicus curiae, the Bar Association
of Dade County, and the court being advised in the premises,
it is ordered that the petition for prohibition be denied and
that the rule nisi issued herein 1 March 1946 be discharged,
and the supersedeas previously issued is hereby vacated.

CHAPMAN, C. J., BROWN, THOMAS, ADAMS and
SEBRING, JJ., concur.

BUFORD, J., dissents.

TERRELL, J., not participating.

BUFORD, J. dissenting:

This case is before us on application for writ on prohibi-
tion.

Rule nisi was issued, return filed and motion ore temus to
make writ absolute notwithstanding the return was made.

The only issue is the sufficiency of the allegations of the
suggestion of disqualification of the Chancellor, one of the
Circuit Judges of the Eleventh Judicial Circuit, to sit in a
certain Chancery cause then pending in said court in and for
Dade County.

Two of the grounds stated in the suggestion (which is verified) and supported by affidavits of disinterested persons are as follows:

"Said Judge Stanley Milledge has only been a circuit judge for approximately six months; that previously to and at the time of his appointment as such circuit judge he had been and was a State Attorney of the Eleventh Judicial Circuit of the State of Florida for approximately three and a half years; that during the time the said Honorable Stanley Milledge was such State Attorney a group of private citizens of Miami organized a committee whose main purpose was to seek injunctions against places where it was understood gambling was being carried on; that said group were not officials and had no duty devolving upon them in connection with law enforcement; that the said Milledge as State Attorney actively worked with and advised said group in connection with the manner and means of obtaining such injunctions and said group made suggestions and gave advice to said Milledge which he acted upon; that he definitely allied himself on said issue and, although it being only his duty to present cases as made, he worked zealously and continuously with these private citizens in said matter; that the said Milledge as State Attorney on account of his deep prejudice against places suspected of permitting gambling to be carried on, went to the extent of employing secret private agents to get information upon which to bring injunction suits such as the type here involved, and paid said secret agents out of his own private funds, thereby definitely attitudinizing the said Milledge on matters of this kind, that the said Milledge as such State Attorney filed in the Circuit Court of the said Eleventh Judicial Circuit of the State of Florida in and for Dade County, several proceedings of the same type and character as the case here involved and seeking the same relief, to-wit, injunction against various clubs and businesses which were similar in character to the club and business operated by the defendants in this proceeding; that in most of said proceedings filed by the said Honorable Stanley Milledge as State Attorney he was unsuccessful, the Judge hearing the same denying injunctions as sought, and that

the said Hon. Stanley Milledge as State Attorney himself, as well as the group with whom he was working and collaborating at said time, stated openly and publicly that they resented the rulings of the court in denying said injunctions and made public statements severely criticizing the rulings of the court, and publicly stated that the manner, the only manner in which conditions could be corrected in Dade County was for the Circuit Judges to grant injunctions in such cases. That the said Milledge as State Attorney singled out and was more zealous in an effort to secure injunctions of the character as here sought than in other matters falling within his jurisdiction; that he constantly prodded by letter and otherwise the Sheriff to devote more attention to such matters and directed him what to do; that this condition continued to exist up until and at the time of the appointment of said Milledge as Circuit Judge; that it has been a matter of common talk in the streets of Miami that Judge Milledge is deeply prejudiced against these deponents as well as all other persons operating business of the character and nature operated by these deponents, and that in proceedings involving applications for injunctions such as here involved he is violently prejudiced in favor of the State and against defendants, and these deponents have heard these statements made many, many times by reputable citizens and they do verily believe that it is wholly impossible for Judge Milledge to give these deponents a fair and impartial hearing and trial in this cause.

"Deponents further state that the conduct and actions of the plaintiff in this cause, Vincent C. Giblin, have intensified and magnified this prejudice on the part of the judge in cases of this character, and particularly against these deponents, and has created such a condition that makes it impossible for the said judge to sit as a fair and impartial arbiter in said cause. The said Giblin practically simultaneously with the filing of this cause issued a long statement which he gave to the newspapers of Miami, and excerpts from which the Miami Daily News as well as the Miami Herald carried in sensational articles, copies of said articles as they appeared in said newspapers being hereto attached,

marked Exhibit A and made a part hereof; that the said Giblin as plaintiff in this cause (and Attorney for himself) in effect charged that the Honorable Stanley Milledge had, while he was State Attorney, used his official position to protect these deponents in the operation of a club known as 'The Farm', while the said Milledge at the same time used the powers of his office as State Attorney, in an effort to eliminate competitors of these deponents who were engaged in the conduct and operation of clubs of a similar nature to that of deponents by bringing injunction suits against such other clubs while protecting these deponents in the operation of their club; that said charges, published charges, so made by the said Giblin were and are contemptuous and basely false; that being made, however, by the party plaintiff in this cause and he being a member of the Bar and representing himself in said cause said charges so published not only intensified the prejudice of the said Judge Milledge against these deponents but placed the said Judge before the public in a position where it would be impossible for him to hear and determine this matter without prejudice against these deponents for the reason that in event the court should make a ruling favorable to these deponents it would then be charged and felt by the public, in view of the character of the charges made by the plaintiff Giblin that the said charges were true and the said Judge was now using his judicial power to protect these deponents. This is a condition deliberately created by plaintiff and it is an intolerable condition and one that makes it impossible for those defendants to secure a fair and impartial trial at the hands of the said Judge Milledge."

The test of the sufficiency of the allegations is not whether the Judge could or could not render a fair and impartial judgment, but the test is whether the facts stated constitute cause for a well-grounded fear that they (the petitioners) will not receive fair and unbiased judicial consideration and a judgment in nowise influenced by bias or prejudice. See State ex rel Brown v. Dewell, 131 Fla. 566, 179 So. 695.

In this case the suggestion and the supporting affidavits clearly allege that the trial judge had occupied the office of Judge for only a few months and that immediately prior to

his appointment as Circuit Judge he was States Attorney and as such States Attorney had aligned himself with a group of private citizens whose purpose it was to obtain injunctions against the operation of places in Dade County, Florida, in which places it was suspected that gambling was being carried on; that he with his own funds employed secret agents to get testimony tending to support cases for injunction. That he filed many suits like the one here pending; that most of those suits resulted in his failure to get relief prayed and that after such results occurred he, as States Attorney, stated openly and publicly that they (he and the group of private citizens above referred to) resented the rulings of the court in denying said injunctions and made public statements severely criticizing the rulings of the court and publicly stated that the only manner in which conditions could be corrected in Dade County was for the Circuit Judge to grant injunctions in such cases.

It further alleges that it has been a matter of common talk in the streets of Miami that Judge Milledge is deeply prejudiced against these deponents, as well as all other persons operating businesses of the character and nature operated by these deponents, and that in proceedings involving applications for injunctions such as here involved, he is violently prejudiced in favor of the State and against the defendant.

In the case of State ex rel. v. Himes, 144 Fla. 145, 197 So. 762, we said:

"Fear that he may not have a fair trial may in some cases be a mental attitude but if the conduct of the judge has been such as to create it, the law requires that he recuse himself. It may ultimately be as devoid of reality as the cenotaph is the remains of the hero it commemorates but if conclusively shown that the seed of fear was planted and the facts related give a reasonable man ground for belief that the judge is prejudiced, that is sufficient. It is contrary to all human experience to contend that a judge under the circumstances stated may single out one charged or that may be charged with crime and talk to the public about sending him to Raiford (State penitentiary) and then contend that the one

singled out when hailed before the Judge for trial had no ground for belief that the latter was prejudiced. This situation is typical of how restricted the candidate for judicial preferment is limited as to topics he may discuss on the hustings. The candidate for legislative or executive office is expected to announce his position on policies and issues and to stoutly advocate them but when a candidate for the judiciary does this, he disqualifies himself to sit in any cause affecting the issue he advocates."

In the case of State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613, we said:

"Section 4341, Compiled General Laws of 1927, the disqualifying statute, does not require an unqualified statement of prejudice. If the facts attested evidence a fear of such prejudice as will endanger his securing a fair trial that is sufficient. Such a fear rests in the mind of the litigant and if the attested facts supporting the suggestion are reasonably sufficient to create such a fear, it is not for the trial judge to say that it is not there."

And, we further said:

"To defeat the contention of relator, counsel for respondent relies on the insufficiency of the affidavits to meet the requirements of Section 4341, Compiled General Laws of 1927. Limited to the technical content of the affidavits, this view could be upheld and supported, but that is not the measure by which they should be evaluated. If taken as a whole the suggestion and supporting affidavits are sufficient to warrant fear on the part of the relator that he will not receive a fair trial at the hands of respondent, they are sufficient."

And further said:

"This court is committed to the doctrine that every litigant is entitled to nothing less than the cold neutrality of an impartial judge. It is the duty of courts to scrupulously guard this right and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit the judiciary and shadow the administration of justice."

152

"To force relator to trial in face of the fear that the suggestion for disqualification warrants would be to impose on him a condition contrary to every principle devised for the administration of justice under our system of jurisprudence. There may, in reality, be little basis for his fear but if it's there, the renunciation of the trial judge wont efface it. There is no reason why he should not, and every reason why he should, excuse himself under the circumstances."

Now it is true that in the case of State v. Himes, supra, the affidavit showed that the judge, while a candidate for that position, in publicly expressing his views about what should be done with gamblers, used the name of the man who was the defendant in the case in which the judge was sought to be disqualified, but in that case we held:

"A candidate for office of judge who advocates and announces his position on certain policies and issues disqualifies himself to sit in any cause affecting the issues he advocates."

Our conclusion is that if a candidate for the office of judge, who advocates and announces his position on certain policies and issues thereby disqualifies himself to sit in any cause affecting the issues he advocates, such disqualification arises by reason of him attitudinizing himself in regard to certain issues and it therefore follows that if a candidate may so attitudinize himself and thereby work a future disqualification a states attorney who publicly adversely criticises Circuit Judges because such Circuit Judges declined to grant the relief prayed in suits instituted in the name of and by the States Attorney in certain classes of cases that States Attorney thereby attitudinizes himself to thereafter sit in judgment as a Judge of the Circuit Court in cases involving like issues. Such conduct, we hold is sufficient to raise the well-grounded fear in the mind of one who is a defendant in a case involving such issues pending before such Judge who has so attitudinized himself that he will not receive a fair and impartial trial.

The allegations of the suggestion for disqualification go a great deal further than being tantamount to saying that the Judge while States Attorney diligently performed his of-

ficial duties in said office. The allegations, if true (and the truth of them is not an issue here) show that he aligned himself with a committee of private citizens the purpose of which was to proceed in the courts against persons suspected of operating places where gambling was permitted. That he expended his personal funds in the employment of secret agents to attempt to procure evidence of facts which would establish the guilt of the suspected persons and counseled and advised the committee in regard to these matters. We do not say that he did not have the right as a citizen and an officer to do these things and so, as is alleged, attitudinize himself in connection with such matters, but the question is that having done so, does that conduct on his part furnish the foundation for a well-grounded belief on the part of one who must defend, in a suit, charges which present just such issues as he then and thereby espoused that he (the party defendant) may not receive a fair, unbiased and impartial trial before the judge who has theretofore so attitudinized himself. We think this question must be answered in the affirmative.

The third allegation contained in the suggestion for disqualification, which is the second allegation hereinabove quoted, has reference to the action of the plaintiff acting as his own attorney in causing certain interviews to be published in the press of Dade County in which interviews it is alleged that Mr. Giblin publicly stated:

"In his statement Giblin charged that Bartlett, Yarborough, Thomas, Friedlander, and Byer are members of the 'syndicate' which operated 'The Farm' during the 1943-44 season. Their gambling operations at the Farm were immensely profitable until the Brook Club and Sunny Isles Casino 'provided acute competition in March 1944.' The erstwhile reform attorney who had not interfered with the syndicates prolonged activities at the Farm immediately instituted injunction suits against The Brook Club and Sunny Isles Casino, the syndicate's competitors. No injunction suit was brought against 'The Farm'."

The rationale of these statements was that Milledge while States Attorney had given "protection" to the particular defendants named in Giblin's bill of complaint. What effect

this so-called blast may have on the mind and conscience of the Judge is a matter which no one can foretell. It is certainly not conducive to procuring the "cold neutrality" of an impartial judge and is calculated to instill a well-grounded fear in the minds of the defendants that they may not receive a fair trial at the hands of the Judge.

We think that in cases where an attorney who has filed a suit which is then pending before a certain Circuit Judge, without suggesting in an orderly manner the disqualification of the Judge, and resorts to public interviews to be published in the press charging such Judge with gross misconduct imputing to him a want of honor and integrity and a want of fitness to occupy a judicial position, a reasonable conclusion to be drawn from such conduct is that he either intends to coerce the Judge to decide the case pending in his favor, or else to hold the Judge up to public ridicule for failure to do so, and public policy demands that the Judge so assaulted recuse himself in the pending case and thereafter proceed, as he may be advised, to deal with the offending attorney.

In the case of Lee v. State, 115 Fla. 30, 155 So. 123, we said:

"It is entirely inconsistent with the idea of justice wholly foreign to the mental and spiritual atmosphere of a judicial trial, offensive to the dignity of the sovereign state, that the trial of a person accused of a major crime, or an inferior crime as for that matter, should have in it, through the bearing of the judge, the activities of the court officials, the manner and conduct of counsel, and the technique of the state's representative, any element or even suspicion of fraud, deceit, oppression, or undue advantage."

In the case of Crook, Judge, v. Newberg, et al., 124 Ala. 479, 27 So. 432, the court said:

"The purpose of the statute is to secure to litigants a fair and impartial trial by an impartial and unbiased tribunal. Next in importance to the duty of rendering a righteous judgment is that of doing it in such manner as will beget no suspicion of the fairness or integrity of the judge. 'The principle of disqualification is to have no technical or strict construction, but is to be broadly applied to all classes of

cases where one is appointed to decide the rights of his fellow citizens. . . . Disqualifying statutes are not to be construed in a strict, technical sense, but broadly, with liberality'." . . .

In Oakley v. Aspinwall et al., 3 N.Y. 547, is is said:

"It is the design of the law to maintain the purity and impartiality of the courts and to ensure for their decisions the respect and confidence of the community. Their judgments become precedents which control the determination of subsequent cases; and it is important, in that respect, that their decisions should be free from all bias. After securing wisdom and impartiality in their judgments, it is of great importance that the courts should be free from reproach or the suspicion of unfairness. The party may be interested only that his particular suit should be justly determined; but the state, the community is concerned not only for that, but that the judiciary shall enjoy an elevated rank in the estimation of mankind."

See also People ex rel. Burke et al. v. District Court of Third Judicial District, 60 Col. 1, 152 Pac. 149.

It is our view that the suggestion of disqualification contains sufficient allegations to meet the rules hereinbefore enunciated in cases hereinbefore cited and that the writ of prohibition should be granted notwithstanding the return.