Oglesby v. State of Florida—Syllabus.

JAMES M. OGLESBY, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed January 30, 1922.

Petition for Rehearing Denied February 27, 1922.

1. Pleas in abatement must be certain to a certain intent in every particular. They must leave nothing to be supplied by intendment and no supposable special answer unobviated.

2. The only grounds of challenge to the favor applicable to grand jurors in this State are those provided for by Section 5954, Revised General Statutes.

3. A public prosecution for a criminal offense must be conducted by the proper official *representative* of the State, and must not under any circumstances be placed under the entire management and control of private parties or their attorneys. It is proper, however, for the State Attorney, when there is no express statutory prohibition, to obtain, with the consent of the court, the assistance of other counsel; and other members of the bar are not incompetent to be engaged for such assistance, and taking part in the trial, by reason of being retained and paid by private persons.

4. When such assistants to the State Attorney are employed in a case, the State Attorney should always remain present at the trial, and see that a public prosecution does not degenerate into a private prosecution, and that the administration of the criminal law is not made a vehicle of oppression for the gratification of private malice, or the accomplishment of private gain or advantage.

5. Where a plea in abatement avers that a member of the grand jury was a son-in-law of "a prosecutor" in the case, the plea is defective if it does not aver that the said grand juror participated in finding the indictment in the case.

6. Where an indictment signed by an acting State Attorney is quashed because the acting State Attorney was employed by private persons in the case, it is competent for the same grand jury with the assistance of a competent acting State Attorney to again indict the accused by due procedure.

A Writ of Error to the Circuit Court for Seminole County; C. L. Wilson, Judge.

Affirmed.

*Landis, Fish & Hull,* for Plaintiff in Error;

*Rivers H. Buford,* Attorney General, and *Marvin C. McIntosh,* Assistant, for the State.

WHITFIELD, J.—Upon an indictment charging murder in the first degree, the defendant was convicted of manslaughter and took writ of error.

It appears that the defendant was first indicted for manslaughter, that a subsequent grand jury indicted him for murder in the first degree, which indictment was quashed and that the present indictment signed by a competent State Attorney was then found by the same grand jury.

The first indictment for murder in the first degree was by the court "of its own motion quashed and set aside" on the ground that the acting State Attorney who signed the indictment had "been heretofore employed by private persons to aid the said State of Florida in the prosecution of James M. Oglesby, was thereby disqualified to act as acting State Attorney in said cause."

A plea in abatement to the last indictment for murder in the first degree, which plea was demurred to, avers in

effect that a member of the grand jury was a son-in-law of the decedent and was ''a prosecutor'' of the defendant; and also that a privately employed counsel participated with the grand jury when the former indictment for murder in the first degree was found by the same grand jury and that there was then present no qualified State Attorney acting in the case. There are other averments that need not be stated here.

Pleas in abatement must be certain to a certain intent in every particular. They must leave nothing to be supplied by intendment and no supposable special answer unobviated. Taylor v. State, 49 Fla. 69, 38 South. Rep. 380; Cannon v. State 62 Fla. 20, 57 South. Rep. 240.

The only grounds of challenge to the favor applicable to grand jurors in this State are those provided for by Section 5954, Revised General Statutes. Peeples v. State, 46 Fla. 101, text 102, 35 South. Rep. 223.

A public prosecution for a criminal offense must be conducted by the proper official representative of the State, and must not under any circumstances be placed under the entire management and control of private parties or their attorneys. It is proper, however, for the State Attorney, when there is no express statutory prohibition, to obtain, with the consent of the court, the assistance of other counsel; and other members of the bar are not incompetent to be engaged for such assistance, and taking part in the trial, by reason of being retained and paid by private persons. When such assistants are employed in the case, the State attorney should always remain present at the trial, and see that a public prosecution does not degenerate into a private prosecution, and that the administration of the criminal law is not made a vehicle of oppression for the

gratification of private malice, or the accomplishment of private gain or advantage. Thalheim v. State, 38 Fla. 169, 20· South. Rep. 938; see also, Miller v. State, 42 Fla. 266, 28 South. Rep. 208.

Section 5954, Revised General Statutes, 1920, which was Section 2810 of Revised Statutes of 1892, is as follows:

"Any person held to answer to any criminal charge may object to the competency of any one summoned to serve as a grand juror before he is sworn, on the ground that he is a prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecution and has been subpoenaed or been bound in a recognizance as such, and if such objection be established, the person summoned shall be set aside."

If on the averments of the plea in abatement the son in-law of the decedent, who was a member of the grand jury, may be regarded as " a prosecutor" within the meaning of the above quoted statute, it is not averred that such grand juror participated in finding the indictment or in the proceedings incident thereto, and the plea in this respect is not certain in every particular and leaves a "supposable special answer unobviated," being thereby insufficient. In Ketrol v. State the grand juror was disqualified to act in any case, being excluded by statute, 9 Fla. 9.

It does not appear by the plea that after the first indictment charging murder in the first degree was quashed and after a competent Acting State Attorney was appointed by the court, that the grand jury did not again consider the case under proper circumstances and duly find the second indictment for murder in the first degree that was signed by a competent Acting State Attorney, who ap-

proved it, if he did not draft it in his official capacity. Nor does it appear with certainty that any conduct of the grand jury or any circumstances affecting their qualifications to act in the case transpired at any time to render them incompetent to find the indictment, or that there was any irregularity or improper conduct or procedure affecting the integrity of the last indictment found. Other subsidiary averments of the plea need not be discussed.

Privately employed counsel should not take part in the prosecution of a criminal case except as is proper when done under the control of a qualified State Attorney, or Acting State Attorney, or other proper officer of the State. Under no circumstances should privately employed counsel act as the representative of the State in any official capacity except that of an officer of the court as distinguished from an officer of the State. See Miller v. State, 42 Fla. 266, 28 South. Rep. 208; Robinson v. State, 69 Fla. 521, 68 South. Rep. 649.

The evidence is ample to sustain the verdict, and even if there was error in excluding evidence to impeach a State witness, there is other evidence as to the same elements of the offense, that is legally sufficient to support the verdict and sentence for manslaughter.

Affirmed.

TAYLOR, ELLIS AND WEST, J. J., concur.

BROWNE, C. J., dissents.

BROWNE, C. J.—Dissenting.

A grand jury at the January Term of the Circuit Court

for Seminole County investigated a homicide committed by James M. Oglesby, and after hearing the testimony of the witnesses and being assisted and advised by the regular State's Attorney found in indictment against Oglesby for manslaughter.

On May 24, 1921, at the next term of the Circuit Court for Seminole County, it was brought to the attention of the Circuit Judge that Mr. George A. DeCottes acting State's Attorney had been specially employed to assist the State in the prosecution of the case of the State of Florida against James M. Oglesby charged with manslaughter. The Circuit Judge ruled that acting State's Attorney was disqualified in the manslaughter case against Oglesby, and appointed. Mr. A. T. Thetford, a practicing attorney, as Acting State's Attorney in that case, Mr. Thetford was sworn and duly qualified.

The defendant by his counsel insisted upon a trial, but the State "being unable to set a trial date at this time," the case was continued for the term. On the next day Oglesby was indicted for murder in the first degree, for the homicide for which he had been previously indicted for manslaughter.

After the Circuit Judge ruled that George A. DeCottes was disqualified to act as State's Attorney in the case against Oglesby, and had appointed A. T. Thetford Acting State's Attorney to represent the State in that prosecution, Mr. DeCottes went before the grand jury—caused certain witnesses to be summoned and presented to them— caused the grand jury to make an investigation into the death of J. F. Mann alleged to have been accomplished by James M. Oglesby—acted as the legal adviser to the grand jury in the investigation of the death of Mann, and prepared and presented to them for the signatures of their

foreman and clerk, a bill of indictment charging James M. Oglesby with murder in the first degree.

Mr. DeCottes was the only legal adviser that attended the grand jury in the investigation of the case against Oglesby which resulted in the finding of the indictment for murder in the first degree.

A plea in abatement was filed to this indictment setting up that in the deliberation and proceedings of the grand jury which resulted in their indicting James M. Oglesby for murder in the first degree, they had been assisted and advised by a person who had no right to be in the grand jury room whom the court had previously ruled was disqualified to act in such capacity.

A demurrer to the plea in abatement was overruled, the court again holding that Mr. DeCottes was disqualified to act as acting State's Attorney in the cause, and of its own motion quashed and set aside the indictment because of such disqualification. Mr. DeCottes then requested to be relieved from further duty as acting State's Attorney, and resigned as such. His resignation was accepted by the court, and Mr. A. T. Thetford appointed acting State's Attorney for the remainder of the term.

The record discloses that prior to finding the first indictment for murder in the first degree, the Circuit Judge ruled that Mr. DeCottes was disqualified as acting State's Attorney in the prosecution of James M. Oglesby, and A. T. Thetford was appointed to represent the State in that case. Upon the subsequent resignation of George A. De-Cottes, the duties of Mr. A. T. Thetford as acting State's Attorney to prosecute the case against Oglesby only, were extended, and he was appointed acting State's Attorney

to perform all the duties of such office in the absence of David Sholtz, State's Attorney.

This was on the 30th of May, 1921. The court then took a recess until 9 o'clock A. M., the following day, when another true bill for murder in the first degree against James M. Oglesby was returned by the same grand jury, who had before them only the same witnesses who had been presented to them by Mr. DeCottes when he was improperly before them, advising, assisting and directing them in their deliberations.

A plea in abatement was filed to this second indictment for murder in the first degree and a demurrer to it sustained, and this is made the basis of an assignment of error that I think is well taken.

This plea in abatement set up that George A. DeCottes "without the consent of the duly elected State's Attorney," "and without consent of the acting State's Attorney," "and without the consent of the Judge of the 7th Judicial Circuit" appeared before the grand jury, caused witnesses to be summoned, presented the witnesses to the and conducts their examination, he advises the grand jury in investigating the case against Oglesby, and "that the said grand jury so guided and requested and aided and advised by the said George A. DeCottes, did present a true bill and indictment against Jas. M. Oglesby charging him with murder in the first degree," and that "Geo. A. DeCottes was the sole and only legal adviser that attended the grand jury in the investigation of the case of the State of Florida v. Jas. M. Oglesby."

The duties of an attorney for the State in attendance on a grand jury are not perfunctory. He is expected to and does render services to them that assist them in reach-

ing a proper legal conclusion. He presents the witnesses and conducts their examination, he advises the grand jury as to the weight and materiality of the testimony and its legal effect, and does these things in the manner which in his judgment is best calculated to produce in the minds of the grand jury a belief in the guilt of the person whose offense they are investigating. He also advises them of the degree of the crime which the testimony adduced, in his opinion, establishes.

When the grand jurors then by their vote give expression to their mental attitude with regard to the guilt or innocence of the accused, and if they believe that he is guilty the State's Attorney or some typist or scrivener for him, performs the manual work of putting their finding on paper. It was not the mere writing of this paper, that caused the court to overrule the demurrer to the first plea in abatement and hold that Mr. DeCottes was disqualified. His disqualification extended to whatever he did in the grand jury room, that the State's Attorney if present might have done, which produced in the minds of the grand jurors an abiding conviction of the guilt of the accused, and the expression of that conviction by their vote to charge him with the crime of murder in the first degree. This frame of mind was induced, and the opinion of the grand jurors formed, while Mr. DeCottes was improperly before them, guiding, assisting and advising them in their deliberations; and their frame of mind,—their mental attitude—their faith in the guilt of the accused— necessarily were reflected and made manifest in whatever they subsequently did.

It is inconceivable that the court in overruling the demurrer to the plea in abatement to the first indictment for murder in the first degree merely intended to destroy the

written or typewritten pages containing the result of the grand jury's deliberations in which they had been assisted and advised by Mr. DeCottes. That indictment was bad, not because of any defect in the paper, the writing, or any other physical defect or condition, but it was because it was the expression of the result of the opinion of the grand jurors, which to some degree was shaped, influenced and affected by the presence in the grand jury room of Mr. DeCottes and his assistance in presenting the testimony and giving them advice.

To say that this could be cured by destroying one indictment and permitting another to be found by the same grand jurors, is futile. Neither does it improve the situation to say that the grand jurors after the first indictment was quashed, recalled and re-examined the same witnesses. That there were no witnesses before the grand jury when the second indictment was found other than those whose testimony brought about the finding of the first indictment, is alleged in the plea in abatement, which the demurrer admits.

Assuming that these witnesses were re-examined in the grand jury room, what purpose was served by such a proceeding? The grand jurors had previously heard their testimony and were familiar with it, recalling the same witnesses and having them repeat the testimony with which the grand jurors were already perfectly familiar, was so needless and perfunctory, as to make the proceeding a farce.

It was not an investigation, as the actual investigation was conducted while Mr. DeCottes was before them, aiding, assisting and guiding them, and both of the indictments were the result of the ratiocinations of the jurors while assisted and guided by Mr. DeCottes.

Is it possible to conceive—can it be seriously contended,—that with the destruction of the improperly obtained indictment for murder in, the first degree that all memory of what the winesses testified to was sricken from the minds of the jurors—all impressions that they had obtained from the advice and counsel of the person who was improperly in the grand jury room, removed—and the opinion of guilt formed by them at that time completely eradicated, and that they went back to their room and recalled the witnesses with minds absolutely unaffected by what had previously occurred? It is unthinkable. It is impossible. Whatever impressions they received, whatever opinions they formed, whatever conclusions they reached while Mr. DeCottes was before them interrogating the witnesses, advising them of the probative force of the testimony and the degree of offense which in his opinion it established, remained with them and shaped and colored their action in finding the second indictment.

I do not mean to imply that Mr. DeCottes did anything improper while in the grand jury room, and from my knowledge of him, I am satisfied he would not. I am satisfied that he did only what the regular State's Attorney or a duly qualified acting State's Attorney should have done; that he presented such testimony and gave such advice as would be helpful to them in shaping their deliberations, forming their opinions, and reaching their conclusions, that having so assisted them that the second indictment for the same offense and of the same degree, resulted from the same influences that produced the first.

My view, that the grand jurors having once heard the testimony and being once advised by the acting State's Attorney, wherefrom they reached a conclusion, were not and could not be affected by subsequently hearing the

same, and only the same, testimony repeated. That whatever they did after the second hearing was not the result of such hearing, but the result of the state of mind produced by the first. This psychology is recognized by the courts in the organization of petit juries. A person who once serves as a juror, whether the jury disagreed or the verdict is set aside, is forever disqualified as a juror in a subsequent trial of the same cause.

The law recognizes that a juror having once heard and considered the testimony, and reached a conclusion with regard to it, cannot rid his mind of the effect produced upon him so as to be capable of being influenced or affected by subsequently hearing the testimony repeated, and in this the law comports with the rules of psychology and metaphysics.

I think, therefore, the demurrer to the plea in abatement to the second indictment for murder in the first degre should have been overruled and the plea in abatement sustained.