STATE, *ex rel.* C. A. BROWN, *et al.,* v. ROBERT T. DEWELL, as Judge of the Criminal Court of Record in and for Polk County.

179 So. 695.

En Banc.

Opinion Filed March 1, 1938.

*Whitaker Brothers, Johnson & Bosarge, Charles F. Blake* and *C. A. Boyer,* for Relators;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, and *J. Rex Farrior,* State Attorney, for Respondent.

TERRELL, J.—Relators were indicted in Hillsborough County for kidnaping and conspiring to kidnap Eugene F. Poulnot. A change of venue was granted, the cause was transferred to Polk County where it was tried in the Criminal Court of Record and the defendants convicted. On writ of error to this Court, the latter judgment was reversed. Brown, *et al.,* v. State, 128 Fla. 762, 175 So. 515. This opinion was clarified in a subsequent opinion filed January 5, 1938.

An indictment for murder in the second degree grew out of the same transaction as the indictment for kidnaping and conspiring to kidnap. A trial on this indictment resulted in a directed verdict for the defendants. On consultation with counsel representing the State and the defendants, the trial court set a day certain to retry the case of Brown, *et al.,* v. State, *supra.* Immediately thereafter the State, through its Assistant County Solicitor, Honorable J. Rex Farrior, filed a motion and affidavit suggesting the disqualification of the trial judge. On being brought to his attention, the trial judge held the said affidavit sufficient in form and disqualified himself.

Defendants thereafter instituted this proceeding by filing their petition in this Court praying for an alternative writ of mandamus directed to the respondent trial judge, commanding him to assume jurisdiction in and try said defendants or show cause why he refused to do so. Respondent filed his return in which he denied the material allegations

of the alternative writ, but asserted the right of the State to suggest his disqualification, that he considered the affidavit correct in form, and being so, he had no alternative but to disqualify himself, but that he stood ready and willing to take charge of and try said cause if the Court directed.

Under the state of the pleadings, the question with which we are confronted is whether or not under Section 2674, Revised General Statutes of 1920, Section 4341, Compiled General Laws of 1927, the State is authorized to file an affidavit suggesting the disqualification of a trial judge in a criminal case on the ground of prejudice.

The statute, in effect, provides that whenever "a party" to any action or proceeeding, Civil or Criminal, shall make and file an affidavit stating that he fears he will not receive a fair trial on account of the prejudice of the judge, stating "the facts and the reasons" for such belief, such judge shall proceed no further therein, but another judge shall be designated in the manner provided by law to try the cause.

In our opinion, this question above stated must be answered in the affirmative. The statute by its terms is available to any party in a civil and criminal proceeding. The State is a necessary party to a criminal proceeding and this Court has held that the statute is available to it in criminal prosecutions. State, *ex rel.* Mickle, v. Rowe, 100 Fla. 1382, 131 So. 331; Dickinson v. Parks, 104 Fla. 577, 140 So. 459. In Corpus Juris, Volume 33, page 1001, and R. C. L., Volume 15, page 526, the question is discussed and cases cited supporting this rule. See also the following cases: State, *ex rel.* Douglas, v. Superior Court for King County, 121 Wash. 611, 209 Pac. 1097; State v. Brown, 8 Okla. Cr. 40, 126 Pac. 245; State, *ex rel.* McAllister, v. State, 278 Mo. 570, 214 S. W. 85.

The second question with which we are confronted may be stated as follows: Is any Assistant County Solicitor

who has been regularly sworn and designated as such, authorized to make the affidavit of disqualification provided in Section 4341, Compiled Genreal Laws of 1927?

Section 5975, Revised General Statutes of 1920, Section 8249, Compiled General Laws of 1927, provides for appointment by the County Solicitor of Assistant County Solicitors, defines their status as such when appointed, and specifies the duties that they are authorized to perform. They may perform, under the statute, the same duties and exercise the same power, as the County Solicitor, filing of informations excepted.

The record discloses that J. Rex Farrior was designated by the Governor to assist in the prosecution of defendants, that he was appointed by the County Solicitor as Assistant County Solicitor of Polk County, that the affidavit of disqualification was filed by him as Assistant County Solicitor on behalf of the State, that the State made no objection to Mr. Farrior as Assistant County Solicitor and both the County Solicitor and the Assistant County Solicitor of Polk County certified that the affidavit of disqualification was filed in good faith.

The duties of County Solicitors are the same as those of State Attorneys, Section 8241, Compiled General Laws of 1927, and both represent the State in criminal prosecutions. Assistant County Solicitors can perform any duty that County Solicitors can perform except the signing and filing of informations. The filing of the affidavit of disqualification is not jurisdictional and is such an act as the Assistant County Solicitor is competent to perform.

The only other question necessary for us to consider is whether or not the defendants as relators have stated such a case as entitled them by mandamus to require the trial judge to assume jurisdiction and try the cause for which they stand charged.

The affidavit and motion suggesting the disqualification of Respondent is grounded on prejudice. Summarized, it alleges categorically:

(1) At the former trial when the State produced as a witness one W. D. Bush, the trial judge remarked to the affiant, "I understand that W. D. Bush's testimony will be a high point in this case and I am going to bear down on him," that after Bush was examined in chief, court was adjourned by Respondent at about three P. M. until the following morning to give the court reporter time to transcribe his (Bush's) testimony in order that defense counsel might go over it before cross-examination, which was done the following day in an abusive and unrestricted manner over the objection of counsel for the State.

(2) At the conclusion of the testimony the trial judge gave all counsel in the case a copy of the charges he proposed to give, to some of which charges the State objected, and then there followed an animated controversy back and forth among counsel and the trial judge as to what part of the charges would be given or what the scope of the argument as to them would be. Some months later when the trial judge was requested to set one of the companion cases for trial, he flatly refused to do so until Hillsborough County paid the board bills incurred for the bailiffs in the two former trials. This unnecessary delay was given wide publicity in the press unfavorable to the trial judge and this aroused his enmity to defendants.

(3) In October, 1937, a trial of defendants was begun on a charge of second degree murder growing out of the same transaction as Brown, *et al.*, v. State, *supra*, that immediately after the jury was sworn, the trial judge announced that he would rule as inadmissible certain evidence affecting the charge of conspiracy to kidnap. Considerable argument of counsel was permitted as to the admission of said testimony

and the judge's ruling thereon was followed by much adverse criticism by the press.

(4) In June and December, 1937, a group of citizens from Hillsborough County went to Tallahassee and petitioned the Governor to remove the trial judge and relieve him from further participating in the trial of said cause on account of bias and prejudice against the State and to assign another judge to try said causes. Both of said petitions were given wide publicity in the press, were commented upon unfavorably to the trial judge, and this aroused his resentment to the State's cause.

(5) During the progress of the trial of said cause lasting many days, the trial judge held secret conferences with counsel for the defendants. These conferences became so prevalent and frequent that counsel for the State protested, but they continued to the end of the trial notwithstanding such protests.

Other charges of prejudice on the part of the trial judge based on general declarations and political intimacy between him and counsel for the defendants are made, but they will not be detailed here. The affidavit is concluded with elaborate reasons for failure to file it in ten days before the beginning of the next term of the court which are not essential to consider. Affidavits of two reputable citizens supporting the affidavit of disqualification are attached as the law requires.

Mandamus is a discretionary writ and will not be granted except on a showing of clear legal right to the remedy sought. Relators contend that the affidavit of disqualification is in every respect insufficient. They assert no other reason for the writ. It is not contended that they are as a matter of right entitled to have their case tried by respondent; that they will suffer inconvenience, undue hardship,

or be deprived of material rights if it is not tried by him. Such a showing does not warrant the relief prayed for.

The test of the sufficiency of the affidavit is whether or not its content shows that the party making it has a well grounded fear that he will not receive a fair trial at the hands of the judge. It is not a question of how the judge feels; it is a question of what feeling resides in the affiant's mind and the basis for such feeling. In Dickenson v. Parks, *supra,* we held that the trial judge might examine the affidavit to determine its legal sufficiency and if found to be so, he had no alternative but to retire from the case. He cannot pass on the truth of the allegations of fact. If they are not frivolous or fanciful, they are sufficient to support a motion to disqualify on the ground of prejudice.

One charged with crime is guaranteed a fair and impartial trial. He is not entitled to more nor is he entitled to be tried by any particular judge or jury. A fair trial means an orderly trial before an impartial jury and judge whose neutrality is indifferent to every factor in the trial but that of administering justice. Courts are mere agencies provided for this purpose, the judge and the bar being the vehicle through which it is accomplished.

Then there is a marked difference between a legal disqualification on the ground of interest, as exemplified in State v. Call, 41 Fla. 442, 26 So. 1014, and a mental disqualification for prejudice, as involved in this case. They are predicated on different grounds, arise from different causes, and are controlled by different statutes.

In view of all that is alleged to have taken place, we are driven to the conclusion that the affidavit of disqualification was sufficient. The trial judge thought so and disqualified himself. Under such circumstances, mandamus is not available to require him to retry the cause.

The ruling of Respondent on the sufficiency of the affi-

davit was therefore correct and his return to the alternative writ was ample. It is accordingly quashed and the proceeding dismissed.

It is so ordered.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.

ELLIS, C. J., and BUFORD, J., dissent.

ELLIS, C. J. (dissenting).—This case is before this Court for the third time: first upon writ of error to review the judgment of the court which rested upon a verdict of guilty against five of the relators in this case on the charge of the substantive offense of kidnaping. The Per Curiam opinion prepared by Mr. Justice DAVIS in the first appearance of the case here, see Brown, *et al.*, v. State, 128 Fla. 762, 175 South. Rep. 515, justified the statement that political interests had been so aroused in Hillsborough County,. in the Criminal Court of Record of which county the information was lodged, as to justify a change of venue to another county in order that the defendants might secure a trial by a fair and impartial jury.

This Court in considering the case on the writ of error said:

"In this connection it is well to observe in the premises that for some unexplained reason not apparent of record, the distinguished counsel for both sides seem to have lost sight of the fact that the defendants were individuals being tried for a serious felony, and not the two contending political factions of the City of Tampa whose supposed crimes and alleged acts of corruption seem to have obscured all intelligent analysis and weighing of the only evidence that bore on the particular defendants' guilt or innocence under the fourth count of the information under which the defendants were finally found guilty."

The second appearance of the case here was upon a motion of the Attorney General for a clarification of the opin-

ion of this Court in disposing of the case on writ of error.

In the view I have of the information, neither opinion contains a correct statement of the case presented for trial in the Criminal Court of Record in Polk County where it was tried by the Judge of that Court, who, acting as the Judge of the Criminal Court of Record of Hillsborough County in the absence of Judge Petteway, transferred the case to the Criminal Court of Record of Polk County, of which Court the Judge making the order of change of venue was the duly appointed and qualified Judge.

In the first opinion by this Court it is distinctly stated that the "first two counts charged conspiracy to kidnap. The last two counts charged the substantive offense of kidnaping."

In the second opinion, prepared to clarify the language of the opinion in the first case, it is stated in substance that the second and fourth counts charged the substantive offense of kidnaping. The language employed by the Court is as follows:

"That was not an acquittal, however, of the charge of kidnaping attempted to be charged under the second count of the information because the fourth count of the information charged the same offense which was sought to be charged in the sceond count of the information and the trial was continued under the fourth count of the information."

An inspection of the information will show that the first count charged conspiracy to falsely imprison Poulnot; the second count charged the substantive offense of falsely imprisoning him; the third count charged the defendants with conspiring to kidnap Poulnot and the fourth count charged the substantive offense of kidnaping him.

After the evidence was received and argument of counsel made the court charged the jury in relation to the counts of the information as follows: "As the Court has hereto-

fore instructed you, the first three counts of the information have been removed from your consideration," there-fore it appears that the defendants were convicted under the fourth count of the information which charged the substantive offense of kidnaping. As appears from the report of the case in 128 Florida 762, *supra,* this Court held the error of the trial court to consist in permitting the jury to consider evidence of a conspiracy to kidnap, upon which, by the charge of the court, the defendants were definitely acquitted. It seems to be perfectly clear that as the defendants were acquitted of the charge of a conspiracy to kidnap that evidence of such a conspiracy, which had been found not to exist, should not be received in the trial of the defendants for the substantive offense of kidnaping.

The first opinion makes that point perfectly clear and the second opinion, given to clarify the language of the first, merely emphasizes that point.

The third appearance here of this case comes upon an application for a writ of mandamus to compel Judge Robert T. Dewell, as Judge of the Criminal Court of Polk County, to sit as Judge in the trial of the case against the relators upon the fourth count of the information charging the substantive offense of kidnaping Poulnot upon which the relators had been convicted and the judgment of the court reversed by this Court in the case of Brown, *et al.,* v. State, *supra.*

The relators were tried upon another charge, growing out of the same transaction which was alleged in the information charging conspiracy to falsely imprison, the offense of false imprisonment, conspiracy to kidnap and the substantive offense of kidnaping. The offense alleged to have grown out of that transaction was murder in the second degree of one Joseph Shoemaker. Upon that charge the defendants were tried and acquitted, after which acquittal

the court convened for the purpose of setting a date for the trial of the case in the Criminal Court of Record for Polk County upon the fourth count of the information charging the substantive offense of the kidnaping of Poulnot. There appeared at that time Honorable Rex Farrior, State Attorney of the Thirteenth Judicial Circuit of Florida, embracing Hillsborough County, as assistant to Honorable Manuel Glover, the duly appointed and qualifieed County Solicitor of the Criminal Court of Record for Polk County, who, by virtue of the order changing the venue and transferring the case to the Criminal Court of Record of Polk County, had charge of the prosecution.

It does not appear in this record by what authority Honorable Rex Farrior appeared as assistant to the prosecuting attorney of the Criminal Court of Record of Polk County, but it seems to be taken for granted that his designation by the Governor to assist in the prosecution of the case on the first trial continued to be in force when the relators were called to the bar for their second trial upon the fourth count of the information.

The court convened on the tenth day of January, 1938, Honorable J. Rex Farrior sought to disqualify Judge Robert T. Dewell, Judge of the Criminal Court of Record for Polk County, on the ground of prejudice against the State and filed a suggestion of disqualification of Judge Dewell supported by affidavits pursuant to Section 4341 of the Compiled General Laws of 1927.

Judge Dewell made an order in which it was recited that he was and had been at all times in that condition of the cold neutrality of an impartial judge, and was without prejudice or bias for or against the State or the defendants or either of them and he found as a fact that no bias or prejudice exists in his mind either for or against the State or the defendants or either of them. Yet he made an order,

in accordance with the suggestion of Mr. Rex Farrior, disqualifying himself from further proceeding in the cause. When that order was entered the relators applied to this Court for a writ of mandamus to compel the Judge to proceed with the trial of the case, the suggestion and affidavits of disqualification notwithstanding.

The alternative writ of mandamus was issued and there was a return by the Judge to whom it was directed, and the cause came on to be heard upon an *ore tenus* application for a peremptory writ, the return of the Judge notwithstanding.

The return of the Judge averred that no prejudice or bias exists in his mind either for or against the State or the defendants or either of them, and "that he stands ready, able and willing to conscientiously perform his duty as trial Judge of the Criminal Court of Record in and for Polk County, Florida, in the cases mentioned." The return avers the order to rest upon the rule that the Judge has no power to determine the truth or falsity of the averments made in the affidavit of disqualification, where the affidavit is sufficient in form.

The rule as approved by this Court in matters of this character is that the affidavit must not only be in form, but it must contain averments of fact sufficiently related to the ground of disqualification as to justify belief in the party to the case that the Judge is biased or prejudiced. City of Palatka v. Frederick, 128 Fla. 366, 174 South. Rep. 826; Suarez v. State, 95 Fla. 42, 115 South. Rep. 519.

So the question presented here is: may an assistant prosecuting attorney in behalf of the State as a party in the criminal prosecution make a suggestion of disqualification of the trial judge under the terms of our statute, Section 4341, *supra,* cause the trial Judge to be disqualified and thus to that extent take the management and prosecution of the case out of the hands of the duly constituted and appointed

prosecuting officer; and, secondly, if that may be done by an assistant prosecuting attorney, are the facts averred in the affidavits in support of the suggestion of disqualification sufficiently related to the conclusion that the judge is disqualified by reason of prejudice to afford a basis in reason and common sense for the fear by the party suggesting the judge's disqualification that the latter will be prejudiced against the party suggesting the disqualification. City of Palatka v. Frederick, *supra.*

The provisions of Section 4341 C. G. L., *supra,* relating to the disqualification of a trial judge because of fear by one of the parties that he will not receive a fair and impartial trial because of the bias and prejudice of the judge have been held by this Court as available to the State. State, *ex rel.* Mickle, v. Rowe, 100 Fla. 1382, 131 South. Rep. 331; Dickenson v. Parks, 104 Fla. 577, 140 South. Rep. 459.

So it follows that if an assistant prosecuting attorney may make the suggestion of disqualification of a trial judge because of prejudice against the State and cause the same to be supported by the affidavits required by the statute, and the facts alleged in the affidavits in this case show a sufficient relation to the conclusion that the court is biased and afford sufficient basis in common sense and reason to justify the fear that the judge is biased against the State then the order of the Judge in this case was correct.

I deem the point to be undisputed that it is the duty of the Judge to hear and determine all cases properly before him for his judicial consideration, and that he must perform that duty whether he wishes to do so or not "unless he be either disqualified as a matter of law, or be challenged and required to recuse himself under circumstances existing that require him as a matter of law to retire from the case, or he, himself, shall make it a matter of record and certify

that he is personally conscious of and feels toward one of the parties such disqualifying bias or prejudice as will in good conscience preclude his impartial consideration of the controversy." City of Palatka v. Frederick, *supra.* 33 C. J. 962, 1012.

Such being the duty of the judge, the parties to the case before him may compel the performance of that duty by writ of mandamus. State, *ex rel.* Claar, v. Branning, 85 Fla. 61, 95 South. Rep. 237; Crump v. Branning, 74 Fla. 522, 77 South. Rep. 228; State, *ex rel.,* v Horne, 75 Fla. 149, 77 South. Rep. 672.

It follows therefore that a judge may not arbitrarily or capriciously refuse to try a cause which is properly before him for his judicial consideration, nor may he accomplish the same thing by deferring to the suggestion of his disqualification supported by affidavits under the statute which allege no facts properly related to the conclusion that the judge is prejudiced and have no basis in common sense or reason to support the alleged fear of the party seeking the judge's disqualification. 11 Ency. Pl. & Prac. 783, note; Moses v. Julian, 45 N. H., text 53, 52.

I am of the opinion that the Honorable Rex Farrior, the assistant prosecuting attorney to Honorable Manuel Glover, the duly constituted and appointed County Solicitor of the Criminal Court of Record of Polk County, where the case was pending, had no authority to attempt the disqualification of the judge in the manner provided for by the statute, because it is not within the power of an assistant to take from the duly constituted and appointed prosecutor the management and control of the prosecution of a case pending before the court where the duly constituted and appointed prosecuting attorney is present and able to discharge his duties. This Court has recognized this principle in Oglesby v. State, 83 Fla. 132, 90 South. Rep. 825; Segars

v. State, 94 Fla. 1128, 115 South. Rep. 537; Jerry v. State, 99 Fla. 1330, 128 South. Rep. 807; Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938; see also State, *ex rel.* McAllister, v. State, 278 Mo. (text 583) 570, 214 S. W. Rep. 85.

There is no reason given in the majority opinion to support the statement that an assistant prosecuting attorney may file a suggestion of disqualification of the judge such as was filed in this case. It is not a question of discharging any duties that the County Solicitor of the Criminal Court of Record of Polk County might perform, but it is a question of assuming control of the prosecution by the assistant, because in the last analysis it amounts to an assertion by the assistant prosecutor that the State prefers another judge to try the cause because in the opinion of the assistant the judge is biased or prejudiced. No one but the duly constituted and appointed prosecutor may speak for the State in such case because for him not to do so and to permit another to make the suggestion is a virtual surrender of the prosecution to his assistants, who may be privately employed or designated under the statute by the Governor to act as assistants, and is a virtual delegation of his power to what in some cases may be privately retained assistants and the prosecution thus degenerates into a persecution instead of an orderly and dignified prosecution of the accused.

The prosecuting attorney is a public officer and the public nature of his employment results from the fact that he is employed by the State to represent the sovereign power of the people by whose authority and in whose name all prosecutions must be conducted. See Fleming v. Hance, 153 Cal. 162, 94 Pac. Rep. 620, text 622; State v. Flavin, 35 S. Dak. 530, 153 N. W. Rep. 296, Ann. Cas. 1918 A 713, text 716.

This Court has recognized in numerous cases that the duly elected prosecuting officer may have any number of

assistants. Whether they offer their services voluntarily or whether they are employed by private prosecutors or whether they appear by executive order from other circuits or other courts to assist in the prosecution they are mere assistants and subject at all times to the direction and control of the duly constituted prosecuting authority of the county and the court in which the prosecution is being conducted.

The appointment of Mr. Farrior by the Governor to go to Polk County and assist Mr. Glover, the duly constituted and selected prosecuting attorney of the Criminal Court of Record for Polk County, did not vest Mr. Farrior with a power to assume prosecution of this case nor did it divest Mr. Glover of his power as the prosecuting officer of the court in the county in which the case was to be tried.

There is no authority in the Constitution and statute law of this State which authorizes the chief executive to appoint an assistant prosecutor to the duly constituted and selected prosecuting attorney of another court and vest such assistant with the power to assume control and direction of the prosecution of a cause when the duly constituted and selected prosecuting officer is present and able to discharge the duties of his office. State v. Flavin, *supra.*

An examination of the allegations in the affidavits which are set forth as a basis for the belief that the judge is disqualified have no relation whatsoever to the conclusion that the judge is biased and afford no basis in reason to justify the fear. To say that the judge had conferences with attorneys for the defendants without showing to what those conferences related or what was considered in them or to say that because the judge stated that a certain witness was, as he understood, the principal witness for the State and that he intended to "bear down" on him constitutes evidence of the existence of bias and prejudice on the part of

the judge against the State, is a most extraordinarily low evaluation or estimate of the judicial character and integrity of the trial judge, because it assumes that the alleged conference was in relation to the defense to be interposed and a professional if not indeed a private interest in such parties. On the other hand, the conference, if it existed at all, may have occurred at some time in the past about a matter in no wise related to the case then pending before the judge. To say that the judge would bear down upon a witness whom he considered to be the principal witness for the State can have no other significance than that he will do his utmost to extract from such witness the truth as he understands it as to the facts about which he purports to testify.

In other words, the phrase "bear down" can have no other legal significance in the connection in which it is used than that the judge will by the use of cross-examination elicit from such witness his opportunity for observing the facts, his ability to relate them and his disposition to speak truthfully. That is the duty of the judge which he oftener than otherwise leaves to the attorneys in the case, but it is none the less his power to be exercised at his own discretion. To attribute to him therefore an unfair and prejudiced motive to give that color and meaning to an unusual phrase is in my judgment to place the judge in an embarrassing and unfair attitude of mind toward the witness.

The allegation that adverse criticism in the newspapers concerning the judge because he stated that he would not proceed with the prosecution until Hillsborough County had paid the expense of the bailiffs aroused his enmity toward those cases and the prosecuting officers is merely a gratuitous assumption and wholly unjustified, besides the allegation is not clear, in that it merely states that it arouses his "enmity toward these cases and the prosecuting officer."

There is nothing in this entire record, nor in the record

brought here by writ of error to review the judgment of conviction of these relators, to show that Judge Dewell, the Judge of the Criminal Court of Record for Polk County, who tried the cases, was other than an able and impartial judge, holding himself, as he said in his order, at all times free and impartial and without prejudice, for or against either party, to discharge his full duty in the trial of this case.

In the affidavits submitted with the suggestion of his disqualification there are no facts averred which would justify the fear in an open and impartial mind that Judge Dewell was in the slightest degree biased or prejudiced against the State, and in this view of the suggestion and affidavits, I think that the peremptory writ of mandamus should be awarded.

BUFORD, J., concurs.