403 So.2d 355 (1981)
Jessie Joseph TAFERO, Appellant,
v.
STATE of Florida, Appellee.
No. 49535.
Supreme Court of Florida.
June 11, 1981.
Rehearing Denied September 29, 1981.
*358 Richard L. Jorandby, Public Defender, Craig S. Barnard, Chief Asst. Public Defender, and Jerry L. Schwarz, Richard B. Greene and Jack A. Goldberger, Asst. Public Defenders, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, Benedict P. Kuehne, Basil S. Diamond and Paul H. Zacks, Asst. Attys. Gen., West Palm Beach, and Michael J. Satz, State Atty., and Linda DeBene, Asst. State Atty., Fort Lauderdale, for appellee.
PER CURIAM.
Tafero was convicted of two counts of first-degree murder and one count each of robbery and kidnapping and received two death sentences and two prison terms. He appeals these convictions and the attendant sentences. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
In the early morning of February 20, 1976, Trooper Phillip Black and Donald Irwin approached a Camaro parked at a rest stop on Interstate 95. Asleep in the driver's seat sat Walter Rhodes; at his side was Jessie Tafero. In the back seat sat Sonia Jacobs and her two children. As Black looked into the car, he noticed a gun at Rhodes' feet, ordered Rhodes out of the car, and ran a radio check on Rhodes and the gun. Eventually Black ordered Tafero out of the car, and, as Tafero exited through the driver's door, he and Black began to scuffle.
Eyewitness accounts vary as to what occurred next. A truck driver who was stopped at the rest area testified that Rhodes stood with his hands in the air while Irwin grabbed Tafero and held him against the patrol car. The witness then heard a single shot and a cry from the trooper, "I'm shot." Several rapid shots followed, and both the trooper and Irwin fell to the ground. The witness concluded that the shots came from the back seat of the Camaro.
A second eyewitness, another truck driver, also testified that Tafero and Black struggled, but added that Black pulled a gun on Tafero and Rhodes. While passing the Camaro on his way out of the rest area, the driver noticed Jacobs in the back seat. He then heard several shots and saw both Black and Irwin fall.
A third eyewitness was co-indictee Rhodes. Rhodes testified that when Black took *359 the gun from the Camaro, Tafero passed another gun to Jacobs in the back seat. Black ordered everyone out of the car and, as Black assisted Tafero from the car, the two began to scuffle. Rhodes, with his back to the scuffle, then heard two shots which sounded as if they were fired from different guns. He turned and saw Jacobs holding a gun which Tafero then grabbed and fired at Black and Irwin, who fell to the ground. All three eyewitnesses agree that Rhodes, Tafero, Jacobs, and Jacobs' children fled in Black's patrol car. Later, the group commandeered another car and took its owner hostage. They were finally apprehended at a police roadblock.
Tafero challenges the sufficiency of the evidence to convict him of murder, but the evidence against him is overwhelming. In addition to the eyewitness testimony, bullets removed from the victims match the gun in Tafero's possession at his arrest. We do not accept Tafero's contention that Rhodes' testimony was unbelievable in that Rhodes actually did the shooting. Rhodes' testimony is corroborated by both the physical evidence and the other eyewitnesses' testimony. Additionally, both truck drivers noticed Rhodes' hands in the air when the first shots were fired. The evidence shows beyond a reasonable doubt that Tafero is guilty of the premeditated murder of both Irwin and Black.
Similarly, we conclude from our review of the record that the state presented sufficient evidence to support Tafero's kidnapping and robbery convictions.
We next consider alleged trial procedure violations. The appellant contends that he was deprived of a fair trial by what he describes as an inherently prejudicial atmosphere surrounding the proceedings. He claims that while in jail police officers taunted and physically assaulted him. The trial judge took action to correct any mistreatment, and there appears to be no way that such conduct, if it occurred, affected the trial itself.
Tafero also complains of widespread publicity of the deaths and the fact that nearly every juror had heard something of the incidents. The trial judge carefully inquired into the prospective jurors' prior knowledge of the case and precisely instructed the jurors to avoid any outside influence. Although he did not sequester the jury, he admonished them not to discuss the case, not to listen to television or radio accounts, and not to read any newspaper articles about the trial.
The United States Supreme Court discussed the impact of pretrial publicity on a defendant's constitutional right of fairness in Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), where the Court stated:
The constitutional standard of fairness requires that a defendant have "a panel of impartial, `indifferent' jurors." Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
"To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."
At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality."
Id. at 799-800, 95 S.Ct. at 2036 (citations omitted).[1]
Neither the voir dire of the prospective jurors nor any other portion of the trial reflects that those selected to try this case *360 were not impartial or unable to lay aside any impressions or opinions which may have resulted from pretrial publicity. The jurors vowed that they could and would decide the case on the merits from the evidence presented in open court. We are unable to discern that they violated this oath in any way.
Tafero contends that the general tenor of the proceedings precluded a fair trial. He complains of insufficient peremptory challenges, the flying of the courthouse flag at half-mast in memory of deceased police officers, and speeches made locally by the attorney general during the trial referring to the "turnpike murders." These circumstances do not appear to have affected the trial and are far from inherently prejudicial. Utilizing the test espoused in Shepperd v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), we find no reasonable likelihood that the matters described affected this trial. No irregularity at trial affected or changed the facts, prevented any party from presenting facts, or prevented the jury from impartially considering the facts. Tafero has failed to prove the existence of any prejudicial influence, and under the circumstances there was no constitutional unfairness. See Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
We now turn to the testimony of Ellis Marlowe Haskew. Haskew is no stranger to the witness stands of this state.[2] At the start of the trial, shortly after learning that Haskew could help the prosecution, the prosecutor supplied Haskew's name to defense counsel. The trial court denied defense's motion for continuance. Four days later, on the morning of Haskew's testimony, defense counsel interviewed Haskew. The trial court denied a second motion for continuance which was based on Tafero's desire to further investigate the truthfulness of Haskew's story.
Haskew's testimony was brief. In essence, he stated that a few weeks prior to the shootings Tafero told him that he would never go back to prison. Haskew also said Tafero told him about a Taser gun and some armor-piercing ammunition that he had; such a gun and ammunition were used at the rest stop.
The trial judge permitted Haskew to testify only after a Richardson inquiry.[3] He found no prejudicial violation for the late giving of this witness's name. At most, any violation by the state was trivial, as was the testimony of Haskew. This is the significant difference between the instant case and Antone v. State, 355 So.2d 777 (Fla. 1978), conviction aff'd. on later appeal, 382 So.2d 1205 (Fla.), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980), in which a major thrust of the state's case was based on Haskew's testimony. Likewise, any alleged failure by the state to disclose that Haskew's attorney's fees were being paid by the Florida Department of Criminal Law Enforcement was harmless. Under the test in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), no new trial is required.
Tafero claims error in the admission of the fact he was on parole, the discussion of the Taser gun, and other items. He claims this evidence had no relevance to the charges against him, and, even if relevant, the volume of the evidence amounted to "prosecutorial overkill." We disagree. Some of this evidence was relevant to show that Tafero had a reason to kill any police officer who stood in his way, some of it was relevant to show that he participated in the shooting, and this evidence did not become a feature of the trial. The primary test for admissibility is relevance.[4]Ruffin v. State, 397 So.2d 277 (Fla. 1981).
*361 The appellant protests the state's proceeding under the dual theory of felony murder and premeditated murder. Although this issue was settled in Knight v. State, 338 So.2d 201 (Fla. 1976), the appellant attempts to distinguish that holding because here two other people were indicted for the same crimes. We fail to find this to be a valid distinction. Tafero had sufficient notice of the charges against him. Proceeding on a felony-murder theory might have been superfluous because the facts clearly demonstrated premeditation. Nevertheless, by the evidence the jury could have found that the homicides were committed for the purpose of forcefully taking the trooper's car to make an escape. There was no error in proceeding under both theories.
Tafero also feels that the trial judge, an ex-highway patrolman, should have recused himself. He urges that the test for recusal is the accused's fear of unfairness, not whether the judge is actually capable of conducting a fair trial. The test of the sufficiency of an affidavit for disqualification for prejudice is whether or not the sworn statement shows that the movant has a well-grounded fear of not receiving a fair trial at the hands of the presiding judge. State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695 (1938). The facts and reasons given in the sworn affidavit must tend to show personal bias or prejudice. This rule is not intended as a vehicle to oust a judge who has made adverse pretrial rulings. Suarez v. State, 95 Fla. 42, 115 So. 519 (1928).
No personal bias or prejudice had been demonstrated in this case. The mere fact that Judge Futch was, in the distant past, a highway patrol officer does not support a claim of bias or prejudice on the judge's part. Tafero presented nothing to warrant the judge's disqualification. See United States v. Archbold-Newball, 554 F.2d 665 (5th Cir.), cert. denied, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977).
Other claimed errors are an alleged abuse of discretion in denying the defense's request to recall two state witnesses, the refusal of the defendant's request to take a polygraph examination, and the exclusion of one venireman. Each of these claims has been examined, and, in the context in which each arose, the trial judge did not err.
Tafero claims that his conviction of robbery constitutes double jeopardy. The jury was charged that they could convict Tafero of murder by premeditation or under the felony-murder concept, the felony being the robbery of Trooper Black.
In State v. Pinder, 375 So.2d 836 (Fla. 1979), this Court held that
where premeditated murder is charged, but the only evidence to sustain the murder conviction is furnished by proof that the killing occurred as the result of one of the felonies enumerated in section 782.04(1), we hold that the defendant may not be convicted and punished for both the felony murder and the underlying felony.
Id. at 839. Pinder is not applicable because in this case there is clear evidence of premeditation, and it was not necessary to convict Tafero of robbery in order to support the murder conviction.
We now turn to the death sentence. Tafero first claims that the state failed to tell him, prior to trial, the specific aggravating circumstances it intended to prove. Such contention is not new and has been previously disposed of adversely to the appellant. See Menendez v. State, 368 So.2d 1278 (Fla. 1979); Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). Similarly, his second contention is that the trial court had no jurisdiction to impose a death sentence because the indictment failed to allege any aggravating circumstances. This claim is likewise without merit.
Tafero contends that the trial judge should not have found the deaths to *362 be heinous, atrocious, or cruel. Absent some circumstances over and above what happened in this instance, the facts do not justify this particular finding. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974). See Kampff v. State, 371 So.2d 1007 (Fla. 1979); Menendez v. State; Riley v. State, 366 So.2d 19 (Fla. 1978); Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977).
The trial judge also found that Tafero created a great risk of death to many persons. The record does not support that finding. Under the facts of this case, attempting to run a roadblock and being stopped by police gunfire does not constitute "great risk" to "many persons" as we defined those terms in Kampff.
The trial judge found other aggravating factors, all of which are justified. They are:
1. Both murders were committed by the Defendant while he was on parole and while he was actually a fugitive from justice.
2. The Defendant does have a significant history of prior criminal activity involving the use or threat of violence to the person of another. The Defendant was convicted of the crime of Assault with Intent to Commit Rape on December 28th, 1967 in Dade County, Florida and was sentenced to five years in State Prison. The Defendant was convicted of the crime of Crime Against Nature in Case # 67-5285A in Dade County on December 28th, 1967 and was sentenced to five years imprisonment to be served consecutively with Case # 67-5284A. In Case # 67-5284A, the Defendant, JESSIE JOSEPH TAFERO, was found guilty of Breaking and Entering an Apartment Dwelling and Assaulting Persons Lawfully Therein, and he was sentenced to five years imprisonment on December 28th, 1967.
* * * * * *
4. The Murders were committed by MR. TAFERO for the purpose of avoiding or preventing lawful arrest or effecting an escape from custody. Evidence presented to this Court indicated beyond any reasonable doubt that MR. TAFERO was on parole and he had indicated to his friends that he would never again go back to prison and that this desire to avoid any future imprisonment was one of the reasons that MR. TAFERO was personally armed with an automatic pistol on most occasions.
5. The Murders were committed to hinder the lawful enforcement of the laws of this State. The victims of these murders, two law enforcement officers, were attempting to enforce the laws of this State after discovering various firearms and various types of drugs and controlled substances in the automobile in which the Defendant was a passenger.
The trial judge also found no mitigating circumstances. The fact that Rhodes received life sentences upon his pleas to second-degree murder and kidnapping does not invalidate Tafero's death sentences in this case in which Tafero did the shooting and probably was the leader of the group. Although the trial court erroneously found two aggravating factors, it properly found four aggravating factors. Because there were no mitigating circumstances, the sentence will not be disturbed. See Elledge v. State, 346 So.2d 998 (Fla. 1977).
We find no error in the trial judge's failure to inquire into Tafero's waiving his right to present evidence at the sentencing phase of the trial. There is no indication that Tafero did not know or understand his right. Tafero claims the penalty assessed him was disproportionate to the offense. We believe otherwise. Further, we reiterate that the death statute provides a sufficient standard for weighing the aggravating and mitigating circumstances and that the statute is otherwise constitutional. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979); State v. Dixon. *363 The statute was not unconstitutionally applied in this case.
The convictions and sentences are affirmed.
We have also considered the appellant's motion for leave to file an extraordinary motion for new trial in the nature of a petition for writ of error coram nobis. That motion is denied.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] Chief Justice Burger would have reversed had the Court been exercising its supervisory power over the federal courts. He agreed with the majority, however, that the due process clause does not require reversal of that state prosecution. 421 U.S. at 803, 95 S.Ct. at 2037 (Burger, C.J., concurring).
[2] See, e.g., United States v. Diecidue, 448 F. Supp. 1011 (M.D.Fla. 1978); Antone v. State, 382 So.2d 1205 (Fla.), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980).
[3] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[4] §§ 90.402 and 90.403, Fla. Stat. (1979), not applicable to this trial, hold that all relevant evidence is admissible except as provided by law. It is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. The evidence challenged here passes that test.